## CONTESTED ELECTION OF OWEN CUSICK.

·APPEAL BY RESPONDENT FROM THE COURT OF QUARTER SESSIONS OF LACKAWANNA COUNTY.

Argued April 23, 1890—Decided October 6, 1890.
[To be reported.]

1. The constitution having fixed the qualifications of voters, it is not in the power of the legislature either to enlarge or abridge them; but legislation may be enacted which merely regulates the exercise of the elective franchise, and does not amount to a denial of the franchise itself.

2. The constitution having provided no machinery for ascertaining whether a particular voter possesses the requisite qualifications, the legislature has power to prescribe the form and nature of the proof by which unregistered electors must establish the existence of a right to vote under the constitution.

3. The requirements of § 10, act of January 30, 1874, P. L. 31, as to what the affidavits of unregistered electors shall contain, are not unreasonable nor in conflict with the constitution; and, as a reasonable certainty in the affidavits is all that the law requires, there is no practical difficulty in complying with them.

4. The primary object of said act of 1874 is to prevent fraudulent voting, and it must be so construed as best to carry out that intent; the affidavit of the unregistered voter must therefore be sufficiently specific to show upon its face that he has the right claimed, and also to found thereon an indictment for perjury.

5. In view of the object aimed at, and of the positive prohibitions and penal provisions contained in other sections of the act, the provisions of § 10 are not merely directory but are mandatory, and an unregistered elector, whose affidavit is not in compliance therewith, is not entitled to vote.

6. A general affidavit averring, in the language of the constitution, the possession of the qualifications therein prescribed, but omitting to give the more specific matters as to residence, taxes, and citizenship, required by said section, is insufficient to authorize the reception of a vote from an unregistered person.

7. When an affidavit was in fact properly made, but the election officer neglected to subscribe the jurat, the defect can be cured and the paper

Statement of Facts.

reformed upon due proof; but affidavits cannot be reformed by whole-sale, and each separate paper requires its independent proof.

8. When a petition to contest an election charges frauds in certain districts' only, but the answer makes counter-charges of frauds in other districts, and the testimony admitted under the answer discloses fraudulent votes for the respondent in the latter, the contestants may take advantage of and use such testimony.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-LIAMS, McCOLLUM and MITCHELL, JJ.

No. 306 January Term 1890, Sup. Ct.; court below, No. 12 January Term 1889, Q. S.

On December 3, 1888, certain electors of the county of Lackawanna filed in the court below a petition contesting the election of Owen Cusick to the office of clerk of the courts of said county. The petition specified certain election districts, in which, as the contestants averred, fraudulent and illegal votes had been cast for the respondent. The respondent answered the petition, denying its allegations, and averring that illegal votes against him had been received and counted in every district in the county. Thereupon, *Mr. John P. Albro* and *Mr. Thomas J. Duggan* were appointed examiners, under the provisions of the act of May 19, 1874, P. L. 208, to take and report the testimony.

A large mass of testimony was taken on the part of the con-testants and the respondents respectively. This testimony was digested by the examiners, who reported to the court the names of such persons as, in their opinion, voted illegally at the election in question, together with the facts upon which their conclusions were founded. Thereupon, the respective counsel for the contestants and the respondent filed motions in regard to the disposition to be made of the questions of law arising upon the examiner's report.

Certain persons were reported by the examiners as having voted without being registered, but after filing affidavits in the following form:

AFFIDAVIT OF NON REGISTERED VOTER.

I, ----------------------------- being duly sworn, say : That I am twenty-one years of age, and have been a citizen of the United States at least one month and resided in the State of Pennsyl-

Statement of Facts.

vania one year immediately preceding the 6th day of November, 1888; that I have resided in the _____ of, _____ two months immediately preceding the 6th day of November, 1888; that I have paid a state or county tax within two years, which tax was assessed at least two months before, and paid one month before November 6th, 1888; that I have not moved into the said district for the purpose of voting therein.

AFFIDAVIT OF WITNESS.

I,_____being duly sworn, say: that I am acquainted with the above named_____and know that he has resided in the above named election district for at least two months immediately preceding the 6th day of November, 1888; and that I am a qualified voter in said district.

Personally appeared the above named voter
and witness, and made oath that the facts sta-
ted by them are true and correct.

　　　　　　　　　　　　　　　　　　　_____

_____

November 6, 1888.

Such affidavits were reported by the examiners to be defective, for the reasons: (a) Because they did not state when and where the voter was born, nor whether a native born or a naturalized citizen, and, if the latter, when and where he was naturalized; (b) because they did not state when and where the tax referred to was assessed, nor when and where or to whom paid; (c) because there was no jurat to the voter's affidavit; (d) because the accompanying affidavit of the witness did not state the particular place where the voter had resided for the preceding two months, and because the jurat to the latter affidavit did not state that either of the affidavits was subscribed by the witness or voter.

The respondent's counsel moved the court to strike from the examiner's report the names of all persons reported to have voted upon such affidavits; to declare such affidavits legal and in compliance with the requirements necessary to entitle non-registered electors to vote; and to declare legal all votes cast by such persons, unless it appeared that the voter was otherwise disqualified.

By the court: Motion refused; exception.[1]

Statement of Facts.

The respondent's counsel moved also that the names of certain persons reported by the examiners to have voted illegally be stricken from the report, for the reason that said names were reported at the request of the contestants, and the districts in which said persons voted were not averred in the contestants' petition.

By the court: We find, as a fact, in response to this motion, that the illegality of the voters named therein is established by evidence introduced into the case by the respondent himself and not by the contestants, and with respect to districts brought into the controversy by being named in the respondent's answer. We hold that the contestants had the right to take advantage of the evidence so introduced and therefore refuse this motion; exception.[2]

In a large number of the affidavits of voters and witnesses, returned by the election officers of various districts, there were no signatures to the jurats. The respondent's counsel moved the court to make an order authorizing and empowering the proper election officers of twenty-three specified districts "to come into court, on a day to be fixed, and sign such of the jurats of the various voters' and witnesses' affidavits as are not signed, it appearing from the testimony, taken by the examiners and now on file in the clerk's office, that such voters and witnesses were severally and legally sworn to their said affidavits, and that the failure to sign said jurats by the proper officers was merely an omission or mistake on the part of said election officers."

By the court: It does not appear from the testimony, taken by the examiners and now on file in the clerk's office, as assumed in this motion, nor can we find as a fact, that any certain voters or their witnesses at the election in question were severally and legally sworn to affidavits required of them as non-registered voters, and that the proper election officers failed to sign the jurats thereto by the omission or mistake of said officers, nor are we sufficiently informed by said motion to what particular voters it is intended to apply. The motion is therefore overruled; exception.[3]

The counsel for the contestants filed motions praying the court to declare illegal, and exclude from the count, the votes cast by the following classes of persons:

Arguments.

(*a*) Certain specified voters, to the number of 359, who, not being registered, filed affidavits which were held by the examiners to be defective, in that they did not state when and where the tax claimed to have been paid by the affidavits was assessed.[4]

(*b*) Eighty-three persons named, who were not registered and filed affidavits held by the examiners not to be in conformity with the requirements of the law, for the reason that said affidavits, while stating that the affiants were naturalized citizens, did not state when, where, and by what courts they were naturalized.[5]

(*c*) Certain persons, not registered, who filed affidavits not stating, to the best of the affiant's knowledge and belief, where they were born, nor whether they were born in or out of the United States, nor that they were ever naturalized, either by themselves or through the naturalization of their parents.[6]

(*d*) Certain unregistered voters, numbering 305, who filed affidavits reported to be defective in that they did not state when, where, and to whom a tax was paid.[7]

By the court: Motions granted; exceptions.[4 to 7]

The court, in an opinion by ARCHBALD, P. J., after discussing the various motions made, and the questions thereby raised, found, as the result of the deduction of the votes declared by its rulings to have been illegally cast, that John H. Thomas received the greatest number of legal votes cast at the election in question, and was duly elected to the office of clerk of the courts of Lackawanna county. A formal decree to that effect, with a direction that the costs of the proceeding be paid by the county of Lackawanna, was then entered; exception.[8]

Thereupon, the respondent took this appeal, assigning for error:

1–3. The refusal of the respondent's motions.[1 to 3]

4–7. The allowance of the contestants' motions.[4 to 7]

8. The final decree of the court.[8]

*Mr. Thomas F. Wells* and *Mr. I. H. Burns* (with them *Mr. Joseph O'Brien*), for the appellant:

1. The important question, raised in this case, is as to the proof to be required of unregistered voters. Few, if any, of

Arguments.

the affidavits filed failed to state that the voter possessed the qualifications called for by the constitution, viz., that he was a citizen of the United States; that he had resided in the state one year, etc.; that he had resided in the election district two months, etc.; that he had, if twenty-two years of age or over, paid a state or county tax which was assessed at least two months and paid at least one month, etc. It was not because the affidavits failed to prove these facts, but because they did not set forth matters not demanded by the constitution, and which in most cases it is impossible to give, that these voters were disfranchised.

2. We contend that the provisions of § 10, act of January 30, 1874, P. L. 31, to the effect that the affidavits shall state the matters for want of which the court below held these affidavits defective, are directory merely, and not mandatory. Words that are affirmative and relate to the manner in which the jurisdiction of an officer shall be exercised, if not followed by words of positive prohibition, will be construed as directory: Bladen v. Philadelphia, 60 Pa. 466; Pearse v. Morrice, 2 Ad. & E. 96; Pittsburgh v. Coursin, 74 Pa. 400; Hershberger v. Pittsburgh, 115 Pa. 86. When the unregistered voter swears that he has the constitutional qualifications of an elector, he is presumptively qualified. This being the essence of the thing required, the other provisions of the statute are directory: Rex v. Loxdale, 1 Burr. 447.

3. If the provisions of the statute that are outside the constitution are to be construed as mandatory, the legislature had no power to make them so. The constitution specifies the qualifications of a voter, and it is beyond the power of the legislature to require anything more. If it may disfranchise a man because he cannot tell to whom he paid his tax, or just when it was assessed, why may it not be required also that he shall be able to read his affidavit to the election board, or to write his name at the foot of it? It is unreasonable to require a statement of the matters specified in the statute. While the legislature may specify the quality and quantity of the proof to be given, e. g., whether it shall be written or oral, whether by one witness or by two, it cannot say that, for the purpose of establishing one fact, another independent fact shall be proved, even though there be some connection between the two.

4. McDonough's Case, 105 Pa. 488, does not rule the present case, as there were no affidavits before the court therein, and the question of their contents could not possibly have been decided.  To say the least, the registry act of 1874 is an obstacle in the way of the unregistered voter, of the kind described in Page v. Allen, 58 Pa. 338, and Commonwealth v. Maxwell, 27 Pa. 444, as unconstitutional, because unnecessarily embarrassing the right of election.  And, in refusing to allow the election officers to come in and perfect jurats to affidavits, the court admits in a general way that mistakes had been made by some officers, and, as it seems to us, it was the duty of the court to fix a day when such officers should come in, and in the presence of the court correct such affidavits as it should then adjudge to be the proper subjects of correction.

*Mr. Everett Warren* (with him *Mr. Henry A. Knapp*), for the appellees:

1. The registry act of 1874 is a valid law, and its provisions are mandatory and imperative: McDonough's Case, 105 Pa. 488.  They are mandatory by every principle and rule of interpretation.  In § 3, there are negative words of prohibition: Pearse v. Morrice, 2 Ad. & E. 96; Bladen v. Philadelphia, 60 Pa. 464; Endlich on Statutes, § 432; Low v. Dunham, 61 Me. 566; Cooley on Const. Lim., 5th ed., 88; McCrary on Elections, §§ 192 et seq.; and disregard of this prohibition is made by § 12 punishable by fine and imprisonment: State v. Hilmantel, 21 Wis. 574; State v. Stumpf, 23 Wis. 630; People v. Kopplekow, 16 Mich. 342; Contested Elections of 1868, 2 Brewst. 52; In re Duffy, 4 Brewst. 544; Endlich on Statutes, 613.

2. The provisions of § 10 of the act of 1874, are reasonable.  They do not require any unreasonable accuracy or particularity.  And it must not be overlooked that the requirement of an affidavit, in every instance, is due to the negligence of the voter in not causing his name to be registered.  Those provisions are also necessary.  The need of an efficient registry law is conclusively demonstrated by the opinions in Page v. Allen, 58 Pa. 338, and Patterson v. Barlow, 60 Pa. 54.  If an unregistered person may vote upon filing an affidavit alleging in general terms that he possesses the constitutional qual-

ifications, without specifying the particulars required by the statute, so as to enable the truth of the allegation to be tested and any perjury therein detected and punished, there are greater opportunities for fraudulent voting under the act of 1874 than there were under that of July 2, 1839, P. L. 519.

OPINION, MR. CHIEF JUSTICE PAXSON:

This case involves a number of interesting questions affecting the right of the citizen to vote at elections, the manner in which such right must be exercised, and the constitutionality of several provisions of the act of January 30, 1874, P. L. 31, entitled "A further supplement to the act regulating elections in this commonwealth."

The rights of the voter are clearly defined by § 1, article VIII. of the constitution, as follows:

"Every male citizen, twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections:

"First. He shall have been a citizen of the United States at least one month.

"Second. He shall have resided in the state one year, (or if, having previously been a qualified elector or native-born citizen of the state, he shall have removed therefrom and returned, then six months,) immediately preceding the election.

"Third. He shall have resided in the election district where he shall offer to vote at least two months immediately preceding the election.

"Fourth. If twenty-two years of age, or upwards, he shall have paid within two years a state or county tax, which shall have been assessed at least two months, and paid at least one month, before the election."

The constitution having thus fixed the qualifications of voters, it is not in the power of the legislature to either enlarge or abridge them.

While the constitution has thus defined the rights of voters, it is silent in many respects as to how those rights shall be exercised. It prescribes very clearly the qualifications which a voter must possess, but it provides no machinery by which to ascertain whether a particular voter possesses such qualifications. All this has been wisely left to the legislature. It would be out of place in the fundamental law.

Lightly as many persons appear to regard the right of citizenship, the history of the government fully bears out the assertion that the exercise of the elective franchise has been productive of a vast amount of fraud. And it is a kind of fraud that strikes at the integrity and imperils the existence of free government. This assertion is not made at random; we have judicial knowledge whereof we speak. Our books are full of cases where such fraud has been developed. In Page v. Allen, 58 Pa. 338, it was said by the late Mr. Justice READ: "I was counsel for Mr. Kneass in 1851, and of Mr. Mann in 1856, and from what I saw in those contested election cases I was fully convinced that the election laws were utterly insufficient in preventing fraud, and subsequent experience has confirmed me in my opinion. In some districts of the city—'plague-spots'—fraudulent voting is the rule, and honest voting the exception. I am fully convinced that nothing but a registry law, honestly and firmly administered, can cure an evil which strikes at the root of our republican institutions."

The legislature has from time to time passed various laws to regulate elections. Their object has always been to preserve the purity of the ballot. It is too late to question the constitutionality of such legislation, so long as it merely regulates the exercise of the elective franchise, and does not deny the franchise itself. Speaking of the registry act of 1869, it was said by Mr. Justice AGNEW, in Patterson v. Barlow, 60 Pa. 54:

"We come now to the important question whether the act of 17th of April last, called the registry law, is constitutional. It is admitted that the constitution cannot execute itself, and that the power to regulate elections is a legislative one which has always been exercised by the general assembly since the foundation of the government. The constitution appoints the time of the general election, prescribes the qualifications of voters and enjoins the ballot, and for all the rest the law must provide. The precincts and places, the boards of election, the lists of electors, whether called a list of taxables or a registry of voters, and the evidence of persons and qualifications, must all be prescribed by law. This undoubted legislative power is left by the constitution to a discretion unfettered by rule or proviso, save the single injunction 'that elections shall be free and equal.' But to whom are the elections free? They are

free only to the qualified electors of the commonwealth. Clearly they are not free to the unqualified. There must be a means of distinguishing the qualified from the unqualified, and this can be done only by a tribunal to decide, and by evidence upon which a decision can be made. The constitution does not provide these; and therefore, the legislature must establish the tribunal and the means of ascertaining who are and who are not the qualified electors, and must designate the evidence which shall identify and prove to this tribunal the persons and qualifications of the electors."

I do not understand the foregoing to be disputed, but the appellant contends that the act of 1874, particularly the tenth section thereof, prescribes certain regulations, which, if they do not deny the right to vote, at least clog its exercise with such conditions as to render it unreasonably inconvenient. At the risk of being tedious, I give the said section in full:

" On the day of election any person whose name shall not appear on the registry of voters, and who claims the right to vote at said election, shall produce at least one qualified voter of the district as a witness to the residence of the claimant in the district in which he claims to be a voter, for the period of at least two months immediately preceding said election, which witness shall be sworn or affirmed and subscribe a written or partly written and partly printed affidavit to the facts stated by him, which affidavit shall define clearly where the residence is of the person so claiming to be a voter; and the person so claiming the right to vote shall also take and subscribe a written or partly written and partly printed affidavit, stating, to the best of his knowledge and belief, when and where he was born; that he has been a citizen of the United States for one month, and of the commonwealth of Pennsylvania; that he has resided in the commonwealth one year, or, if formerly a qualified elector or a native-born citizen thereof, and has removed therefrom and returned, that he has resided therein six months next preceding said election; that he has resided in the district in which he claims to be a voter for the period of at least two months immediately preceding said election; that he has not moved into the district for the purpose of voting therein; that he has, if twenty-two years of age or upwards, paid a state or county tax within two years, which was assessed at least two

Opinion of the Court.

months and paid at least one month before the election. The said affidavit shall also state when and where the tax claimed to be paid by the affiant was assessed, and when and where and to whom paid; and the tax receipt therefor shall be produced for examination, unless the affiant shall state in his affidavit that it has been lost or destroyed, or that he never received any; and, if a naturalized citizen, shall also state when, where and by what court he was naturalized, and shall also produce his certificate of naturalization for examination. But if the person so claiming the right to vote shall take and subscribe an affidavit that he is a native-born citizen of the United States, or, if born elsewhere, shall state the fact in his affidavit, and shall produce evidence that he has been naturalized or that he is entitled to citizenship by reason of his father's naturalization, and shall further state in his affidavit that he is, at the time of making the affidavit, of the age of twenty-one years and under twenty-two years; that he has been a citizen of the United States one month, and has resided in the state one year; or, if a native-born citizen of the state and removed therefrom and returned, that he has resided therein six months next preceding said election, and in the election district two months immediately preceding such election, he shall be entitled to vote, although he shall not have paid taxes. The said affidavits of all persons making such claims, and the affidavits of the witnesses to their residence shall be preserved by the election board, and at the close of the election they shall be inclosed with the list of voters, tally-list and other papers required by law to be filed by the return judge with the prothonotary, and shall remain on file therewith in the prothonotary's office, subject to examination as other election papers are. If the election officers shall find that the applicant possesses all the legal qualifications of a voter he shall be permitted to vote, and his name shall be added to the list of taxables by the election officers, the word 'tax,' being added where the claimant claims to vote on tax, and the word 'age,' where he claims to vote on age; the same words being added by the clerks in each case, respectively, on the lists of persons voting at such election."

The preliminary question at once suggests itself, are these provisions mandatory, or merely directory? If the latter, the registry law is little better than a rope of sand, so far as the

preservation of the purity of the ballot is concerned. That this court regarded such provisions as mandatory, when the case of McDonough's Election, 105 Pa. 488, was before it, is apparent from the opinion of Mr. Justice TRUNKEY. If we concede that the point was assumed rather than decided in that case, there was abundant reason and authority to sustain the assumption. "Where the words are affirmative," said Mr. Justice SHARSWOOD, in Bladen v. Philadelphia, 60 Pa. 464, "and relate to the manner in which power or jurisdiction, vested in a public officer or body, is to be exercised, and not to the limits of the power or jurisdiction itself, they may and often have been construed to be directory; but negative words, which go to the power or jurisdiction itself, have never, that I am aware of, been brought within that category." A clause is directory when the provisions contain mere matter of direction and no more; but not so when they are followed by words of positive prohibition: Pearse v. Morrice, 2 Ad. & E. 96. It was accordingly held, in the case first cited, that the fifth section of the act of April 21, 1858, P. L. 386, which declares that "no debt or contract, hereafter incurred or made, shall be binding upon the city of Philadelphia, unless authorized by law or ordinance, and an appropriation sufficient to pay the same be previously made by councils," were words of positive prohibition, and therefore mandatory. This ruling has been uniformly followed since.

It would be difficult to find language more positive or prohibitory than the act of 1874. It is negative in form. The third section declares: "No man shall be permitted to vote at the election on that day whose name is not on said list, unless he shall make proof of his right to vote as is hereinafter required." Moreover, it is highly penal in its character. The twelfth section provides that "if any election officer shall refuse or neglect to require such proof of the right of suffrage as is prescribed by this law, or the laws to which this is a supplement, from any person offering to vote whose name is not on the list of assessed voters, or whose right to vote is challenged by any qualified voter present, and shall admit such person to vote without requiring such proof, every person so offending shall, upon conviction, be guilty of a misdemeanor, and shall be sentenced for every such offence to pay a fine not

Opinion of the Court.

exceeding five hundred dollars, or to undergo an imprisonment not more than one year, or both, at the discretion of the court." So much for the election officers who shall violate the provisions of the act. Section 17 is aimed at the voters themselves. It provides that " the respective assessors, inspectors and judges of the elections shall each have the power to administer oaths to any person claiming the right to be assessed, or the right of suffrage, or in regard to any other matter or thing required to be done or inquired into by any of said officers under this act; and any wilful false swearing by any person in relation to any matter or thing, concerning which they shall be lawfully interrogated by any of said officers or overseers, shall be perjury." In view of the positive prohibitions of the act, and the severe penalties by which the violators of its provisions are punished, there is nothing upon which to construct even a plausible argument that it is merely directory.

Before I proceed to discuss the details of the act, as developed by the respective assignments of error, these general rules for its construction may be stated with entire confidence:

(a) The primary object of the act is to prevent fraudulent voting. Hence, it must be so construed as to best carry out the intent of the legislature, and not to defeat it.

(b) The affidavit of the non-registered voter must be sufficiently specific as to show upon its face, without reference to any other fact or circumstance, that the voter has the right which he claims ; and

(c) It must also be sufficiently specific to found thereon an indictment for perjury, in case any of the material allegations therein are wilfully false.

It is also proper to observe that the only objection that can be urged against the provisions of the act of 1874 is the argumentum ab inconvenienti, there being nothing which necessarily prevents a non-registered voter, who is otherwise qualified, from casting his ballot.

The first assignment of error raises the most important as well as comprehensive question in the cause. It is there alleged that the court below erred in " declining to allow the respondent's motion to strike from the examiner's report of illegal voters the names of all unregistered voters possessing certain qualifications, to wit, having filed affidavits covering

the constitutional requirements of legal voters." The affidavits referred to in this assignment were substantially as follows:

First, that the voter was twenty-one years of age;

Second, that the voter had been a citizen of the United States at least one month, and had resided in the state of Pennsylvania one year immediately preceding November 6, 1888;

Third, that the voter had resided in the election district in which he voted for two months immediately preceding November 6, 1888;

Fourth, that the voter had paid a state or county tax within two years, which tax was assessed at least two months before November 6, 1888;

Fifth, that the said voter had not moved into the said district for the purpose of voting therein.

Connected with this affidavit was the affidavit of a witness, the particulars of which we need not specify, except as is hereinafter stated.

It needs but a glance at the above affidavit of the voter to see that it is a general affidavit embodying the language of the constitution, but omitting many of the specific matters required by the act of 1874. If it had been drawn for the purpose of enabling unqualified persons to vote, and to avoid the penalties prescribed by statute for illegal voting, it could not have been framed more adroitly. The act of 1874 substitutes for this loose kind of affidavit one of a more searching character. As before observed, it was intended to prevent fraud; and to this end, it probes the conscience of the voter by requiring him to state such specific facts as to enable the truth of his affidavit to be tested, and the proper punishment imposed upon him if it is false.

The affidavit in question fails to comply with the act of 1874 in the following particulars, inter alia:

(a) It does not state when and where the voter was born.

(b) It does not state when and where the tax claimed to be paid by the affiant was assessed, and where and to whom paid.

The affidavit of the witness does not comply with the statute in this, that it merely avers generally that the voter " has resided in the above-named election district for at least two months immediately preceding the sixth of November, 1888," instead of stating, as required by the act, " where the residence

of the person so claiming to be a voter" was, in said election district.

It was urged on behalf of the appellant that at least some of these requirements are in excess of the legislative authority; that they are so stringent as in many instances to deprive the citizen of the right to vote, in disregard of the mandate of the constitution which declares that "no elector shall be deprived of the privilege of voting by reason of his name not being registered:" § 7, article VIII. By the word "elector" in this clause, is meant a duly qualified elector. When an elector has established his qualifications, in the manner pointed out by law, his vote must be received in obedience to the mandate of the constitution. Until, however, an unregistered voter has thus complied with the law, he is not even prima facie a qualified elector. We are unable to see anything in these requirements of the act of 1874, which, properly construed, are unreasonable, or in conflict with the constitution. It certainly imposes no hardship upon the voter to require him to swear, "to the best of his knowledge and belief, when and where he was born." There are few persons of sufficient intelligence to cast a ballot who have not some knowledge and belief of the time and place of their birth, and those who have neither knowledge nor belief can say so; the law does not require impossible things.

This brings us to the more serious objection that the affidavit does not state where and when the tax claimed to be paid by the affiant was assessed, and where and to whom paid. The force of the argument upon the act of 1874 was concentrated upon this one point. It was urged that it would often be impracticable, if not impossible, to give this information with precise accuracy, and that it is hard to be confronted with the loss of his vote on the one hand, and an indictment for perjury on the other. A reasonable compliance with the law does not subject him to either peril. The act was not intended as a trap in which to catch honest voters: it was passed to secure an honest, unbought, and unintimidated ballot; to prevent the lawfully-expressed will of the duly-qualified elector from being set aside by the corrupt practices which have in so many instances defeated the will of the people.

Is there any practical difficulty in the elector's stating when

and where the tax was assessed, or when and where and to whom paid? A reasonable certainty in these matters is all that is required in the affidavit. As was well said by the learned judge of the court below: "It is not to be presumed that the tax-payer will be able to furnish the specific day and date of the assessment of his state or county tax, and it is unreasonable under ordinary circumstances to require him to do so. Identification of the tax is mainly what is sought for, and, when that is satisfied, it is sufficient. Taxes are identified by the year in which they are assessed, and the residence of the tax-payer in a certain locality in the county. These particulars are all that the statute, as we construe it, intends to require." And we quite agree with the learned court below, that the blanks in use, furnished according to the form prepared by the secretary of the commonwealth under the twenty-second section of the act, in so far as they require the voter to give the day and month as well as the year of the assessment, exceed the demand of the statute. It is sufficient if the tax is identified so that it may appear that its payment entitles him to vote, and that, if it is falsely stated, he may be indicted for perjury. Without such particularity, the affidavit is not of any use for any purpose. There may be instances, however, in which a specific day and date may be found necessary, as where the tax which the elector claims to have paid is a tax for the same year in which the election is held. In such case, a specific date may be found necessary to show that it was assessed at least two months prior to the day of election; but, as a general rule, the tax is sufficiently identified by giving the year in which it was assessed.

The voter must also state where the tax was assessed. Surely there is neither hardship nor inconvenience in this. The voter knows in what township, borough, or ward his property is situate, and in which it is assessed. It may be very convenient for the fraudulent voter to take a general affidavit that he has been assessed with a tax, wholly omitting the place where it was so assessed. In such case, there is nothing by which the accuracy of his statement can be conveniently tested, and a prosecution for perjury would be difficult. The duly qualified elector, who casts an honest ballot himself, and desires that others shall do the same, has no need to shelter himself behind a loose, vague affidavit.

The act further requires that the affidavit shall state when, where, and to whom the tax was paid. What was said in regard to the assessment is applicable here. Convenient certainty only is required. If the voter has forgotten the name of the tax collector to whom he paid it, a statement that he paid it to the tax collector of the proper district, I apprehend, would be sufficient. If he does not remember the precise day, he can approximate it so as to show that it was within the proper time. If he has lost all recollection upon the subject, he must apply for information to the person to whom he paid it, or to the person who paid it for him. If he has lost his tax-receipt, and is unable to produce it for examination, he may make affidavit that he has lost it, or, if the fact be so, that he never received it.

Nor is it any hardship to the naturalized citizen to require him to state when, where, and by what court he was naturalized. They obtain the great privilege of American citizenship cheaply enough to justify their graceful submission to the laws of the country of their adoption. When the illustrious Paul asserted his right as a Roman citizen to be heard before he was condemned, the chief captain said to him, " With a great sum obtained I this freedom ; " to which Paul replied, " But I was free born." We are more generous than was imperial Rome, and the citizenship for which she exacted a " great sum " we bestow freely upon all who ask for it.

As before remarked, the contention upon this point settles down to the argumentum ab inconvenienti. It may be that the careless voter who does not value his privilege sufficiently to see, as every one can see with very little trouble, that his name is placed upon the registry list, and who gives no thought to the means to establish his right to vote until he comes to the poll to deposit his ballot, may suffer some inconvenience, and in some instances lose his vote, not because he is not duly qualified, but for the reason that he has not the means of proof at hand to satisfy the tribunal which the law has appointed to hear his case. So, the litigant in a suit at law may be defeated though his case be never so good, if he fail to produce his evidence at the proper time. When an unregistered elector offers his vote at the poll, the law challenges it instantly, and he knows that he can only avoid the challenge by a strict compli-

ance with the requirements of the statute.  If he comes to the poll without his proof, it is his own folly and improvidence. He has no right to expect that his indifference to his rights, or indolence in asserting them, are to be condoned by nullifying the provisions of a law which is the main bulwark of the purity of the ballot, and which deprives no qualified elector of his right, except as the result of his own indifference to his duties as a citizen.

Other defects in the affidavit were pointed out by the learned judge below in his opinion, which we need not discuss at length. One was, that it does not state whether the voter was a native-born or a naturalized citizen, and, if the latter, when, where, and by what court naturalized, etc.; and another was that there is no jurat to the voter's affidavit, and the witness's affidavit or its jurat does not state that either of said affidavits were subscribed by the said voter.  It is sufficient to say that the act, being mandatory, must be strictly complied with.  The law, however, does not intend that a duly qualified elector should lose his vote for the negligence or misprision of an election officer.  Hence, I apprehend that, when an affidavit has in point of fact been made in compliance with the act, and the informality is the result of the ignorance or neglect of the officer before whom it was taken, such defect could be cured and the paper reformed, upon due proof of what occurred at the time.

The second assignment alleges that the court erred in declaring certain votes to be illegal, on request of contestants, in election districts not mentioned in contestants' petition.  As I understand the case, this point arose in the following manner:  In their petition, the contestants specified certain districts, in the county, in which they alleged frauds were committed, and, of course, were confined in their testimony to those particular districts.  But the respondent, in his answer, alleged that illegal votes had been received and counted in every election district in the county.  This put the whole county in issue, and he was correspondingly unlimited in his proofs. The whole body of election records and returns of the general election of 1888, and the corresponding registry lists, were put in evidence by him.  He now seeks to utilize so much of this evidence as will serve his turn, and reject the remainder.  This

proposition does not require discussion. " It would be an un-
heard of course of proceeding," said the learned judge below,
" in a court supposed to be organized for the administration of
justice, to hold, as we are now moved to do, that the evidence
put in by one party could be utilized by himself so far as it
suited him, but could not be used against him to his disadvan-
tage, if any part of it happened to present that aspect."

The third assignment alleges that " the court erred in declin-
ing to permit certain election officers to come in and sign the
jurats of the affidavits of certain voters and witnesses upon re-
quest made therefor, where it appeared by a clerical omission
said jurats were not signed by said election officers at the time
of the election." I have already intimated that an affidavit
which is merely defective from the absence of the jurat, may be
reformed upon due proof that it was properly made before the
proper officer. Such a principle was recognized in Pottsville
Bor. v. Curry, 32 Pa. 443. It was there said by Mr. Justice
STRONG: " A party is not to lose his right to trial by jury through
the mistake or omission of the officer of the law. Here the
oath required by the act of assembly had actually been made,
and it had been reduced to writing. The attestation by the
prothonotary, only, was omitted. The appellants had done all
that the law required to obtain the appeal, and could not be
affected by the failure of the prothonotary to discharge his
duty." It is true, this occurred in a civil suit in the Common
Pleas, but the decision applies with equal force to an election
contest. Why should the elector lose his vote because of the
neglect of the officer of the law in attaching the jurat? Such
mistake may not only be innocent, but is likely to occur at a
crowded poll, particularly in view of the fact that the election
officers, in many instances, are without experience. I notice
that this principle has been applied by the lower courts to elec-
tion cases in some instances: See McCann v. Shonk, 4 Luz. L.
Reg. 91; Griffith's Case, 9 Luz. L. Reg. 211. While the
learned court below were not agreed upon the law as applicable
to this motion, they refused it because it was not sustained by
the evidence. There was nothing before the court upon which
the affidavits could have been reformed. The evidence was
general and vague in its character, and not confined to specific
affidavits. The voters who took and subscribed the affidavits

Statement of Facts.

were not called.    The affidavits could not be reformed by wholesale.    Each separate paper required its independent proof. We cannot say the court below erred in refusing this motion.

The fourth, fifth, sixth, and seventh assignments are sufficiently covered by what has already been said.    None of them is sustained.    The eighth and last assignment is the formal one that the court erred in its decree that John H. Thomas was duly elected to the office of clerk of the courts of Lackawanna county.    This does not require discussion.    We see no reason to interfere with the action of the court below.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.