# Corydon Township Election.

*Election law—Poll tax—Payment of tax—Act of July 15, 1897, P. L. 276.*

1. The payment of an occupation or poll tax with the money of the taxable at his request by another person without a written and signed order of the elector as required by the Act of July 15, 1897, P. L. 276, will prevent the taxable from voting on a tax receipt which he has acquired in such a manner.

2. The eligibility of a candidate for public office cannot be adjudicated in an election contest. The proper method of determining a question of eligibility is by quo warranto.

Argued April 30, 1912. Appeal, No. 164, Jan. T., 1912, by O. J. Tome, from judgment of C. P. Warren Co., Dec. T., 1911, No. 25, in election contest In re Election of Supervisor in Corydon Township, Warren County. Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

The opinion of the Supreme Court states the case.

*Error asigned* was in entering judgment for Frank Kennedy.

*Edward Lindsey,* with him *C. E. Bordwell,* for appellant.

*D. I. Ball,* with him *A. G. Eldred,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, May 22, 1912:

This was an election contest under the Act of May 19, 1874, P. L. 208, over the office of supervisor of roads of Corydon township, Warren county. On the face of the returns Frank Kennedy received 53 and O. J. Tome 54 votes. The court below found that one of the votes cast for the former and seven of those for the latter

were illegal. This made the count, Kennedy 52, Tome 47, and the certificate of election was given accordingly; Tome has appealed.

One of Tome's votes was rejected because the voter "had not paid any state or county tax within two years prior to the state election," and four of those rejected fell within the following findings of fact and conclusions of law made by the court below: "Prior to that date (November 7, 1911) each of those persons had been duly assessed with a valuation based on occupation only, and a county tax levied upon same in each instance was paid by some other person than the respective elector, and none of the persons paying the said tax presented to the collector, at least thirty days prior to the date of holding the said election, in either instance, any written and signed order of the elector authorizing such payment to be made. No other taxes were paid by any one of the said electors within two years prior to November 11, 1911 (November 7, 1911?) ...... The tax in each instance was paid with the elector's own funds...... The votes of Earl Hook, Walter Mason, Fred Slater, Grant Wilcox.......should be excluded from the count,......because the payment of their occupation tax, upon which their right to vote depended, was not in accordance with the provisions of the Act of July 15, 1897, P. L. 276."

This raises the question stated by the appellant, "Will the payment of an occupation tax with the money of the taxable at his request by another without a written and signed order as required by the Act of July 15, 1897, P. L. 276, disfranchise the taxable so paying?" In disposing of this question the court below says: "The act provides that, from and after its passage, 'It shall be unlawful for any person or persons to pay or cause to be paid any occupation or poll tax assessed against any elector, except on the written and signed order of such elector authorizing such payment to be made, which written and signed order must be pre-

sented at least thirty days prior to the date of holding the election at which such elector desires to vote.' The second section makes it 'unlawful for any officer, clerk or other person authorized to collect taxes and receipt therefor, to receive payment of, or receipt for any occupation or poll tax assessed for state or county purposes from any person other than the elector against whom such tax shall have been assessed except upon his written and signed order authorizing such payment to be made.' The third section declares that, 'It shall be unlawful for any person to vote or attempt to vote at any election upon a tax receipt obtained in violation of this act.' And the fourth section makes any violation of the act a misdemeanor punishable by fine or imprisonment. There can be no doubt that a tax paid in disregard of the provisions of this act will not qualify the voter, being prohibited, under a penalty, and made a misdemeanor. However it may discharge the party from the tax so far as the state or county entitled to collect it is concerned, it is not a legal payment of which the party can avail himself to qualify his vote. ...... Not only is the payment of the tax of another without a written order prohibited and made a misdemeanor, but so also is the attempt by the voter to vote on the strength of it, which is the material thing. The law having put its most solemn condemnation on every step of the transaction, the ballot which the voter cast in violation of it is clearly illegal and ought not to be counted...... We do not think the Act of 1897 offends against the constitutional provisions as to the requirements necessary to qualify a lawful voter. It does not in itself deprive any elector of his franchise. It is but a regulation of the manner in which the occupation tax shall be paid and to provide an absolutely certain and unimpeachable method of determining the essential fact that the voter has paid his occupation tax with his own money. In Cusick's Election, 136 Pa. 459 (1890), the principle is there settled that 'the constitution hav-

ing fixed the qualifications of voters, it is not in the power of the legislature either to enlarge or abridge them; but legislation may be enacted which merely regulates the exercise of the elective franchise and does not amount to a denial of the franchise itself. The constitution having provided no machinery for ascertaining whether a particular voter possesses the requisite qualifications, the legislature has power to prescribe the form and nature of the proof by which......electors must establish the existence of a right to vote under the Constitution...... The legislature has from time to time passed various laws to regulate elections, their object has always been to preserve the purity of the ballot. It is too late to question the constitutionality of such legislation so long as it merely regulates the exercise of the elective franchise, and does not deny the franchise itself.'......"

We agree with the views so well expressed by the learned court below. The constitutional requirement is that the elector "shall have paid his state or county tax" before he is qualified to vote. The prime purpose of the legislation creating occupation and poll taxes is to enable persons to become qualified as voters rather than to raise revenue, and the legislature having afforded this opportunity may in all reasonable ways prescribe and regulate the manner of the payment of such taxes. The Act of 1897, supra, was no doubt passed to remedy a public evil which had come into existence through the wholesale purchase of tax receipts by organized political parties, contrary to the intent of the Constitution that each elector should individually pay a tax. The object of the act was to see to it that each elector should in good faith pay such taxes with his own funds; there is nothing in the statute which serves to disfranchise the citizen, for it rests with each man properly to qualify himself to exercise the franchise of an elector, and the act affords him ample opportunity so to do, without unreasonable restraints.

It comes to this, the Constitution requires that each elector shall pay a tax in order to qualify himself, the legislature has afforded that opportunity, at the same time hedging it around with proper and reasonable safeguards, and only payment in the manner prescribed by this legislation constitutes a payment of the tax in a legal sense, so as to give the voter the requisite constitutional qualification.

The real point in this case is whether or not error was committed in awarding the certificate of election to Kennedy instead of to Tome. The qualifications of only one other of Kennedy's electors seem to have been in question, which left him at least 51 admittedly valid votes. Whereas, deducting the votes of the five electors whose qualifications we have discussed from Tome's total, he only has left to his credit 49; therefore, it becomes unnecessary to consider the questions involved in the rulings on the remaining two votes cast for Tome and rejected by the court below.

Kennedy's eligibility to hold the office of road supervisor cannot be questioned or adjudicated in this proceeding. Under the Act of 1874, supra, the court merely determined which candidate received the highest number of legal votes and is entitled to the certificate. The proper method of determining a question of eligibility is by quo warranto.

The appeal is dismissed at the cost of the appellant.