## King's Contested Election.

*Election contest—Qualification of petitioners—Payment of taxes—Act of May 19, 1874.*

1. Under section 18 of the Act of May 19, 1874, P. L. 208, a petition for the contest of an election for tax collector must be signed by at least twenty-five qualified electors who voted at the election contested, and be verified by at least five of such petitioners, and a petition will be quashed and the proceeding dismissed where one of the five petitioners who verified the petition had not paid any taxes within two years immediately preceding the election contested.

2. Such a petitioner was not a qualified elector under the 1st section of article viii of the Constitution of Pennsylvania, which makes it one of the qualifications of an elector that "he shall have paid within two years a State or county tax."

3. In a proceeding to contest an election, an affidavit of the required number of qualified electors is essentially necessary to give the court jurisdiction.

4. The fact that the tax collector whose re-election is being contested actually has paid to the county commissioners, without knowing it, though an error of his clerk in making up his records and returns, the county taxes of the petitioner which would have made him a qualified elector if he actually had paid the taxes to the collector at the time the clerk thought they had been paid, will not estop the collector from saying that he never received the taxes from the petitioner. It is not a question of the private legal rights of any of the parties. It is a question of the qualification of an elector under the law.

Motion to quash petition for election contest. Q. S. Fayette Co., Dec. Sess., 1921, No. 3.

*H. S. Dumbauld,* for petitioners.

*Brownfield, Goodstein & McDaniel* and *George Patterson,* for respondent.

Van Swearingen, P. J., June 3, 1922.—Following the election for tax collector in North Union Township, on Nov. 8, 1921, the election officers made

return that L. J. King had been elected to that office, having received eleven more votes than his nearest competitor, Asa L. Martin, and King was given a certificate of election. On Dec. 7, 1921, a contest on behalf of Martin was commenced by petition under the provisions of the Act of May 19, 1874, P. L. 208. Later, a motion to quash the petition was filed, testimony in support of the reasons assigned therefor was taken, and the matter now is before the court on that motion.

One of the reasons assigned in support of the motion is that the petition for the contest was not verified by five qualified electors who voted for tax collector at the election. If that allegation be true, it is fatal to the proceeding, and the other reasons in support of the motion need not be considered. The petition is verified by but five of the thirty petitioners. The 18th section of the act under which the proceeding was instituted provides that in this class of contests the petition shall be signed by at least twenty-five qualified electors who voted at the election contested, and shall be verified by at least five of the petitioners. By the 1st section of article VIII of the Constitution of Pennsylvania, one of the qualifications of an elector is that, "If twenty-two years of age and upwards, he shall have paid within two years a State or county tax, which shall have been assessed at least two months and paid at least one month before the election." It was shown by the evidence that William H. Astleford, one of the signers of the petition in this case and one of the five persons who made the affidavit to the petition, and one of the persons who voted at the election, who is more than twenty-two years of age, had not paid a State or county tax within two years immediately preceding the election contested, not having paid any such taxes prior to that election since Dec. 23, 1918. Astleford testified that on Sept. 24, 1920, he went to the office of the tax collector to pay his wife's taxes, and that the collector wrote two receipts, one for Astleford's own taxes and the other for the taxes of his wife, and that, not having enough money with him to pay the taxes of both himself and his wife, he paid his wife's taxes and took the receipt for the same, and told the tax collector he would come back in a few days and pay his own taxes, and that the tax collector retained the receipt he had written for Astleford's taxes. The witness testified that he forgot all about the matter, and that he never went back, and never paid his taxes, and never lifted the receipt that the tax collector prepared upon the occasion mentioned. On cross-examination, Astleford admitted that at or about the time he signed and was sworn to the petition he stated that he was a qualified elector of North Union Township, and he testified that he was sincere about the matter at that time, having forgotten about the tax incident mentioned, and really thinking he had paid his taxes, and that he continued to think himself a qualified elector until later, when the receipt under date of Sept. 24, 1920, which had been retained by the tax collector, was shown to him, and the truth of the matter was called particularly to his attention.

Some confusion has arisen over the fact that a clerk in the tax collector's office, who then knew nothing about the Astleford transaction, in making up the records of the office from the stub-books, and in making up the tax collector's returns for county taxes to the office of the county commissioners, included therein as having been paid by Astleford the county taxes covered by the receipt of Sept. 24, 1920, noted on the stub of the receipt-book, which receipt was retained by the tax collector because the tax actually was not paid, as already noted. It appears reasonably certain that the amount of the Astleford county tax covered by the receipt mentioned, and appearing on the stub of the receipt-book as having been paid to the tax collector, actually was paid

2 D. & C.

by the tax collector to the county commissioners, possibly without his knowledge, through the errror of his clerk in making up his records and returns. On the receipt itself, when offered in evidence at the hearing on the motion to quash the petition, the word "Void," in red ink, in the handwriting of the tax collector, appeared, and on the stub, in the handwriting of the tax collector, appeared the words "Not paid, receipt retained." It does not appear clearly where the receipt was kept, although Astleford testified that he never had had it, and the tax collector's clerk testified that when she made up the records, the words now appearing upon the stub of the receipt-book were not there; and other entries appear on the tax collector's books in what is alleged to have been an attempt to correct the error as to the Astleford taxes, but which counsel for the petitioners contends show an attempt on the part of Astleford and the tax collector to disqualify Astleford as an elector at the election contested. Counsel for the petitioners contends also that the collector of taxes, being the same person as the respondent here, having paid the amount of Astleford's county taxes to the county commissioners, is estopped now from saying that he never received those taxes from Astleford, so as to disqualify Astleford as an elector. The tax collector was not present at the hearing on the motion to quash the petition, being at that time dangerously ill with pneumonia, and we do not have his explanation as to these matters.

But we are not convinced that there was any plan between Astleford and King to make it appear that Astleford was not a qualified elector, so as to require a quashing of the petition in this case. It is shown by the evidence that at the election contested Astleford was a staunch supporter of Martin, having voted for him and worked for him all day, and that it was not until after he had signed and had been sworn to this petition, and it was too late to remedy the matter, that he ascertained that he was not a qualified elector when he voted at the election. And we find as a fact that Astleford had not paid a State or county tax within two years immediately preceding the election, and, therefore, that he was not a qualified elector who voted at the election contested. Under these circumstances, Astleford was not qualified under the law to become one of the signers of the petition and one of the five persons required to make the affidavit thereto. "An affidavit of the required number of qualified electors is essentially necessary to give jurisdiction:" Williams v. Johnson, 16 W. N. C. 223; North Union Township Election Case, 250 Pa. 98. Nor are we satisfied of the correctness of the contention that because King actually paid to the county commissioners the amount of Astleford's county taxes, through an error, he is estopped now from saying that he never received those taxes from Astleford, in order to disqualify Astleford as an elector. It is not a question of the private legal rights of any of the parties. It is a question of the qualification of an elector under the law. It has been held that the payment of an occupation or poll-tax with the money of the taxable, at his request, by another person without a written and signed order of the elector, as required by the Act of July 15, 1897, P. L. 276, will not qualify the taxable to vote on a tax receipt which he has acquired in such a manner: Corydon Township Election, 236 Pa. 588. And the constitutional provision is that "he shall have paid within two years a State or county tax."

And now, June 3, 1922, for the reasons stated in the opinion herewith filed, the petition is quashed and the proceeding is dismissed, and it is ordered that the costs be paid by North Union Township.

From Luke H. Frasher, Uniontown, Pa.