## Stadtmiller's Appeal

*W. M. Ruddock,* of *Fisher & Ruddock,* for appellant.
*William E. Pierce,* county solicitor, for respondent.

CREPS, P. J., July 22, 1937.—Appellant applied for registration as a voter under The Permanent Registration Act to Grace Williams, a clerk in the office of the commission, who refused her application, whereupon the matter came before the commission on petition, as provided by said act, and the commission, after due public hearing as required, entered its order providing, inter alia:

". . . the Commission hereby refuses the petition of AGNES ABIGAIL STADTMILLER for registration on the ground that she must and is required under the said Act to give the date of her birth in order to be registered, which petitioner has refused to do, although she is over the age of twenty-one years and is in every other respect qualified to register."

On the same day, to wit, July 12, 1937, appellant filed her appeal, wherein it was averred that an injustice had been done her in that she had been denied registration as

an elector solely because of her failure to state the date of her birth; whereupon, it being evident that the matter involved merely a question of law, it was set down for argument on July 14, 1937, at 1:30 p.m., of which notice was given to counsel for appellant and counsel for the commission, at which time said counsel were present and arguments had thereon. Both counsel and the court are satisfied there is no decision of an appellate court construing the present Permanent Registration Act, nor could it be learned that any lower court had passed upon its provisions.

The basic right to vote is fixed by the Constitution of Pennsylvania, where, by article VIII, sec. 1, amended November 5, 1901, it is provided:

"Every male citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections, subject however to such laws requiring and regulating the registration of electors as the General Assembly may enact".

Then follow the requirements as to citizenship, residence, etc.

Section 17 of The Permanent Registration Act for Boroughs, Towns, and Townships of April 29, 1937 (no. 115), provides, inter alia:

"(a) For the purpose of registering the qualified electors of each borough, town, or township, the commission shall prepare registration cards, serially numbered, in duplicate, and containing spaces for entering the information required by section eighteen of this act, and the following affidavit:

"REGISTRATION AFFIDAVIT

"State of Pennsylvania⎫
⎬ss.:
"County of            ⎭

"I hereby swear, or affirm, that I am a citizen of the United States, that on the day of the next election I shall be at least twenty-one years of age, and shall have resided in the State of Pennsylvania for one year (or, having

previously been a qualified elector or a native born citizen of- the State, and having removed and returned, then six months) next preceding said election, and in the election district two months, that I am legally qualified to vote, that I have read (or have had read to me) the foregoing statements made in connection with my registration and that they are true and correct."

Section 18 of said act contains the following:

"(*a*) Every person claiming the right to be registered as an elector must appear in person before the commission, a commissioner, a registrar, or a clerk, at the office of the commission, or at such other place as the commission shall have designated, and answer the questions required to be asked in accordance with this act.

"(*b*) He shall first be sworn or affirmed to the truth of the statements which he is about to make, and informed that any wilful false statement will constitute perjury and will be punishable as such. He then shall be asked to state the facts required herein, and his answers, together with other information herein required, shall be recorded in his presence by the registrar, commissioner, or clerk, in permanent writing or typewriting, in duplicate in the proper spaces on the registration cards as follows".

Following this, paragraph (*c*) sets out in detail "the facts required". There are 23 separate matters of inquiry, all of which need not here be noted, number 20 of which is "the date of his birth".

From the above quotations it appears the age requirement for voting as fixed by the Constitution is "twenty-one years", the affidavit in the registration act contains the statement by the prospective elector that he is "at least twenty-one years of age", whilst one of the listed inquiries to be made and answered is "the date of his birth". The question is, under these circumstances, whether an elector has a right to be registered on his statement and affidavit as to being "twenty-one years of age", or must he also give "the date of his birth".

We understand that in some counties the commission has ruled it is sufficient that the applicant for registration merely make the statement and affidavit as to being "over twenty-one years of age" and that he should not be required to give the "date of his birth". As heretofore noted, we are not advised of any decision by either an appellate or lower court directly upon the act, and we approach the question by considering whether there are any decided cases upon similar subjects which control or have a bearing on the present inquiry.

The case of In re Cusick's Election, 136 Pa. 459 (1890), involved the question of the power of the legislature to prescribe rules and regulations concerning the registration of voters and the methods of establishing their right to vote. At that time, the first paragraph of section 1, art. VIII, of the Constitution was in its original form: "Every male citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections"; there being no express provision enabling the legislature to adopt rules requiring and regulating registration of voters as is now contained in the present form of the Constitution, heretofore quoted. The Supreme Court held that the legislature possessed the power to make reasonable regulations governing the exercise of the elective franchise, using, inter alia, the following language, at page 468:

"There must be a means of distinguishing the qualified from the unqualified [that is, the court was speaking of electors], and this can be done only by a tribunal to decide, and by evidence upon which a decision can be made. The constitution does not provide these; and therefore, the legislature must establish the tribunal and the means of ascertaining who are and who are not the qualified electors, and must designate the evidence which shall identify and prove to this tribunal the persons and qualifications of the electors."

Again, in Corydon Township Election, 236 Pa. 588, 591, in approving the principles in the case of In re Cusick's Election, supra, it was said by the court:

" 'The constitution having provided no machinery for ascertaining whether a particular voter possesses the requisite qualifications, the legislature has power to prescribe the form and nature of the proof by which . . . electors must establish the existence of a right to vote under the constitution' ".

In In re Cusick's Election, at page 467, it is held:

". . . it is too late to question the constitutionality of such legislation, so long as it merely regulates the exercise of the elective franchise, and does not deny the franchise itself."

And in DeWalt et al. v. Bartley et al., 146 Pa. 529, 540, we find:

"The test is, whether such legislation denies the franchise, or renders its exercise so difficult and inconvenient as to amount to a denial."

By amendment to the Constitution in 1901, specific power was given to the legislature to do what the above line of cases held it could do by reason of a necessity therefor, there being by that amendment inserted in the first portion of section 1 of article VIII the clause: "subject however to such laws requiring and regulating the registration of electors as the General Assembly may enact". Under these circumstances, there can be no question of the power of the legislature to make such regulations as it deems fit and proper for such purposes. We believe, however, that admitted power on the part of the legislature must nevertheless be limited to prescribing reasonable rules and regulations, or, as stated in the cases above quoted, to the passage of legislation which "merely regulates the exercise of the elective franchise, and does not deny the franchise itself"; and, as has been held, the test to be applied is, "whether such legislation denies the franchise, or renders its exercise so difficult and inconvenient as to amount to a denial".

As bearing on this question, we again look into the case of In re Cusick's Election, supra. The facts in that case were as follows: It was an election contest and there were

charges that fraudulent and illegal votes were cast. Certain persons were found to have voted without being registered, but after filing affidavits in the following form:

"AFFIDAVIT OF NON REGISTERED VOTER.

"I, ........................, being duly sworn, say: That I am twenty-one years of age".

(Then follow statements as to citizenship, residence, etc.). It was contended that such votes were illegal for the reason, inter alia, that the voters had failed to comply with the requirements of section 10 of the Act of January 30, 1874, P. L. 31, the then existing law regulating elections, with regard to the date and place of birth of the several voters. The applicable portions of this section were as follows:

"On the day of election any person whose name shall not appear on the registry of voters, and who claims the right to vote at said election, shall produce . . . and the person so claiming the right to vote shall also take and subscribe a written or partly written and partly printed affidavit, stating, to the best of his knowledge and belief, when and where he was born".

A further defect averred was that as to the assessment and payment of taxes, then a requisite to the right to vote, but not now required, voters had made affidavits only of a general character embodying the wording of the Constitution, and had failed to answer certain specific inquiries concerning the assessment and payment of taxes as required by the Act of 1874, supra. In discussing the requirements of said act, as to stating "to the best of his knowledge and belief, when and where he was born", as well as supplying in detail the information concerning the assessment and payment of taxes, the Supreme Court said, inter alia, at page 473:

"It was urged on behalf of the appellant that at least some of these requirements are in excess of the legislative authority. . . . We are unable to see anything in

these requirements of the act of 1874, which, properly construed, are unreasonable, or in conflict with the constitution. It certainly imposes no hardship upon the voter to require him to swear, 'to the best of his knowledge and belief, when and where he was born'. There are few persons of sufficient intelligence to cast a ballot who have not some knowledge and belief of the time and place of their birth, and those who have neither knowledge nor belief can say so; the law does not require impossible things. . . . .

". . . It was urged that it would often be impracticable, if not impossible, to give this information with precise accuracy, and that it is hard to be confronted with the loss of his vote on the one hand, and an indictment for perjury on the other. A reasonable compliance with the law does not subject to either peril. . . .

"Is there any practical difficulty in the elector's stating when and where the tax was assessed, or when and where and to whom paid? A reasonable certainty in these matters is all that is required in the affidavit. . . .

"The voter must also state where the tax was assessed. Surely there is neither hardship nor inconvenience in this. The voter knows in what township, borough, or ward his property is situate, and in which it is assessed. . . .

"The act further requires that the affidavit shall state when, where, and to whom the tax was paid. . . . Convenient certainty only is required. If the voter has forgotten the name of the tax collector to whom he paid it, a statement that he paid it to the tax collector of the proper district, I apprehend, would be sufficient. If he does not remember the precise day, he can approximate it so as to show that it was within the proper time. If he has lost all recollection upon the subject, he must apply for information to the person to whom he paid it, or to the person who paid it for him."

The ultimate conclusion of the Supreme Court in the Cusick case, from which we have extensively quoted, was that the making by the prospective voters of the naked or

general affidavits embodying only the language of the Constitution, but omitting many of the specific matters required by the Act of 1874, did not qualify them to vote. In so doing that court held that the requirements of the Act of 1874 were not unreasonable, that they did not deny the franchise nor render its exercise so difficult and inconvenient as to amount to denial, that the legislature possessed the power to prescribe such requirements, that they were mandatory, and that a reasonable compliance therewith was a requisite to the right to vote. Whilst that case, as we have heretofore observed, involved the question of a voter qualifying who had not registered, yet we feel the reasoning and conclusions are entirely applicable to the present case. Both involve the same principle. Viewing the present inquiry in the light of the ruling, we are satisfied the legislative requirement that a prospective voter shall furnish "the date of his birth" is a reasonable one and therefore within the power of the legislature to prescribe, and that accordingly the question must be answered.

Against this position the argument has been advanced that there are persons who do not know this fact. We recognize that there are many people who by reason of varying circumstances do not have accurate knowledge of the date of their birth. We assert that no one should be deprived of a right to vote merely because he or she cannot state with precision the exact date of his or her birth. But such situations may be met in what we believe should be the practical application of the law. Any person, although not able to give his or her birth date, nevertheless has a belief as to his or her approximate, if not definite, age in years. By a process of calculation, based upon such person's age, he or she can at least approximate the year of his or her birth. To be more specific, if a person does not know his birth date, but from whatever sources were available believes or considers himself to be 50 years of age, it follows that he was born in the year 1887, and we are satisfied that in such case to insert in the appro-

priate portion of the registration blank the words "believed to be 1887" would constitute a substantial compliance with the law so as to entitle such person to be registered as a voter, if otherwise qualified. As the court said in the Cusick case, "the law does not require impossible things".

There is another thought which has impelled us to our present conclusion. If it could be determined that the only reason for securing information as to one's date of birth was to have proof of his age, it might be argued that it is just as effective and good that he swear that he is, or will be on the date of the next election, 21 years of age. However, we believe the nature and character of the 23 subjects of inquiry to be answered leads unalterably to the conclusion that the legislature had in mind not merely the matter of establishing the constitutional right to vote but the securing of certain data for purposes of identification at subsequent elections, so as to prevent "phantom" or other dishonest voting. For instance, one's height, in feet and inches, the color of his hair, or his eyes, can have nothing to do with his constitutional right to vote as determined by age, citizenship, residence, etc. Yet those are three of the questions to be answered, being numbered 17, 18, and 19. In this view of the matter, we feel it must be admitted that to have a record of a specific date of birth of a given person would be at least a very helpful means of identifying him and distinguishing him from some other person, especially of the same name.

Again, we feel it a matter of proper inquiry to determine whether the provisions concerning information to be required are in their nature mandatory or merely directory. In section 18, supra, it is stated that an elector desiring to be registered "must appear" in person before certain named officers and "answer" the questions required to be asked. If we were to supply the appropriate prefix before the word "answer" it would be must, and the construction would be "must answer". Or, similarly, if we were to delete from said paragraph (a) the phrases

between the words "appear" and "answer", the construction would be "must appear and answer", which could mean only "must appear" and "must answer". Further, we find also a use of such words as "shall" and "required", wherein it is provided that the elector "shall" first be sworn, "shall" be asked to state the facts "required", his answers, together with the information "required", "shall" be recorded, etc. We can conceive of no words, at least of an affirmative character, which could have been used that would more clearly express mandatory, rather than directory, provisions than those used in the portions of the act above pointed out.

Since the argument of this case, we understand some question has been raised as to the provisions under consideration being unconstitutional as offending against what may be termed the "uniformity of elections" clause of the Constitution, section 7, in that certain registration laws applying to cities do not require the giving of the date of birth, but require only an affidavit that the applicant is 21 years of age. We have not gone into this question, particularly for the reason that we understand the last legislature amended the law as it applies to Philadelphia and we do not have access to such enactment. However, offhandedly, it would seem that the amendment to the Constitution in 1928 would meet such objection, wherein it is provided, inter alia, "except that laws regulating and requiring the registration of electors may be enacted to apply to cities only, provided that such laws be uniform for cities of the same class. . . ."

To those who resent being required to give the date of their birth for the purpose, viewing it as an intrusion into their private affairs, and arguing that the affidavit of being 21 years of age should be sufficient, we remark that the enactment of the law was the act of the legislative and executive branches of the Government. Our province is merely to determine whether there was power and authority for such legislation; not to pass upon the question of whether the ends and purposes could have

been served by less precise requirements as to which no one could take offense. We feel, however, it is rather unfortunate that, before this, those whose interests, whether official or political, may be said to be State-wide, have not taken the necessary steps to have this matter presented to the Supreme Court for its authoritative word on a subject of such scope and importance.

One further observation: If our conclusion shall be held to be erroneous, we feel it at least possesses the merit of safety. Anyone who registers by complying with the requirement as to giving the date of his or her birth will not be disqualified as a voter if it should be later determined that he or she should have been permitted to register merely on an affidavit as to age; and, if any have been registered merely by swearing as to age, there is plenty of time and opportunity to correct that defect.

### Decree

And now, July 22, 1937, in keeping with the foregoing discussion and opinion, it is ordered and decreed that the decision of the commission refusing to register appellant as a voter because of her refusal to give the date of her birth be, and it is hereby, affirmed.

From James L. Jack, Indiana.