## Betters Appeal

*W. N. Dinsmore*, for appellant.

*Louis Klein*, for Borough of Aliquippa.

SOHN, J., January 30, 1948.—David N. Betters, a police officer of the Borough of Aliquippa, was suspended from the police department August 8, 1947, by Louis Fontana, burgess. On August 11, 1947, at a regular meeting of council, the burgess presented a complaint charging him with conduct unbecoming a police officer. After consideration of the charge, council suspended Betters for a period of 10 days, without pay, beginning August 8, 1947. Subsequently, Betters requested a hearing before the police civil service commission. The commission held a hearing September 17, 1947, at which time testimony of the burgess, the chief of police, and defendant and witnesses were taken.

On September 25, 1947, the civil service commission notified Betters that it sustained the action of borough council. Upon petition of Betters, an appeal from the

action of the police civil service commission was allowed to the Court of Common Pleas of Beaver County. Petitioner contends: (1) That the suspension was unjust, unlawful, unreasonable and contrary to the evidence; (2) that one of the members of the police civil service commission died August 14, 1947, and more than 30 days intervened prior to the hearing; therefore the action of the two remaining members was unlawful and contrary to the provisions of the Police Civil Service Act of June 5, 1941, P. L. 84, 53 PS §351.1.

We refer first to petitioner's contention that the action of the two remaining members conducting the hearing was unlawful and contrary to the provisions of the act of assembly. Section two of the act provides in part:

"There is hereby created in each borough, incorporated town and township of the first class where a police force of not less than three members is being maintained a civil service commission, hereinafter referred to as the commission. Each commission shall consist of three commissioners who shall be qualified electors of the political subdivision for which appointed and shall be appointed initially to serve for the terms of two, four and six years, and, as terms thereafter expire, shall be appointed for terms of six years as follows:

"In the case of a borough the appointments shall be made by the borough council; in the case of an incorporated town appointments shall be made by the town council, and in the case of the townships of the first class the appointments shall be made by the township commissioners.

"The members of each commission first appointed under the provisions of this act shall be so appointed within thirty days after effective date of this act.

"Any vacancy occurring in any commission for any reason whatsoever shall be filled for the unexpired term within the period of thirty days after such vacancy occurs. Such vacancies shall be filled by the appointing power which made the original appointment."

We are of the opinion that the action by the two remaining members of the commission was lawful. In Commonwealth ex rel. Fortney v. Wozney, 326 Pa. 494, in referring to the requirements of a statute that public officers act within a specified time, Mr. Chief Justice Kephart said:

"The provisions of a statute requiring public officers to act within a specified time are generally regarded as directory, unless time is of the essence of the thing to be done, or the statute indicates that the provision is to be regarded as mandatory. See Gearhart v. Dixon, 1 Pa. 224; Pittsburgh v. Coursin, 74 Pa. 400; Cusick's Election, 136 Pa. 459, 470; Sutherland, Statutes and Statutory Construction (1st ed. 1891), section 442; Endlich, Interpretation of Statutes (1888), section 436."

We find nothing in the Police Civil Service Act which indicates that the direction to fill a vacancy within a period of 30 days was intended to be mandatory. As to the general conduct of business, in 46 C. J. 1378, §8(b), we find the following statement:

"It is a well established parliamentary rule that a quorum of the body must be present in order to validate its action or to transact any business. In order to constitute a quorum it is not necessary that the entire membership of the assembly be present. In reckoning a quorum the general rule is that, in the absence of a contrary provision affecting the rule, the total number of all the membership of the body be taken as the basis; and ordinarily a majority of the authorized membership of a body, consisting of a defi-

nite number of members, constitutes a quorum for the purpose of transacting business; but it is competent for the statute or constitution creating the body to prescribe the number of members necessary to constitute a quorum or to delegate to the created body the authority so to prescribe. And an assembly indefinite as to number may act by a majority of the members present at any legal meeting, no matter how small a proportion they may constitute of the whole number entitled to be present."

This statement precedes section 9 (2), where appears the following statement:

"It has generally been held that, in reckoning for a quorum where actual membership is the basis, the rule is not to count as members those who are not at the date of the meeting regular members of the body. If there is a vacancy the majority of the remaining members will suffice for a quorum. Whenever the number required to constitute a quorum is fixed by statute or other rule, a diminution in the number of members of the body will not change the number necessary for a quorum."

In Commonwealth ex rel. v. Fleming, 23 Pa. Superior Ct. 404, at 408, Judge Henderson said:

"A quorum being present, this was authorized to transact any business which might lawfully come before the body in the absence of special limitations or restrictions upon that power. It is a rule of the common law and generally of all parliamentary bodies that when a quorum is present the act of a majority of the quorum is the act of the body: 2 Kent's Com. 293; Buell v. Buckingham, 16 Iowa 284; 2 Cook's Corp., sec. 713a; 1 Dillon on Municipal Corp., secs. 216, 217; United States v. Ballin, 144 U. S. 1 (12 Sup. Ct. Repr. 507)."

The statements heretofore referred to have been accepted without question as is evidenced by the action

of officers of municipal corporations and boards created by the legislature in the administration of the business of the Commonwealth. There was, until recently, for three years or more, a vacancy in the Milk Control Commission of the Commonwealth. There has existed for a number of years, a vacancy in the Pennsylvania Liquor Control Board, which vacancy was recently filled. Each of these boards shall consist of three members. Two members continued to transact the business of each board. We know of no question as to the authority of the proceedings conducted by the remaining two members of these boards.

Petitioner also contends that the action of the commission affirming the suspension imposed by council is unjust, unlawful, unreasonable and contrary to the evidence. We have concluded that the action of the board was lawful. We now consider whether the action was unjust, unreasonable and contrary to the evidence. The evidence offered by the burgess is to the effect that petitioner, in the presence of the burgess, with his fist or his open hand, struck a man in the face. The incident occurred on Franklin Avenue, the main street in the borough of Aliquippa, at a place where a pedestrian had been struck by an automobile. The pedestrian was lying in the street and petitioner and other police officers were endeavoring to keep a crowd, which had assembled, orderly and away from the injured pedestrian. Petitioner and his witnesses testified that petitioner had considerable difficulty with the man, whom he is charged with striking. The testimony indicates that this individual was quite insistent upon approaching the injured man, who was lying on the street. The testimony of petitioner indicates that at the time of the incident, he, another patrolman, Captain Miller, and two civilians were endeavoring to maintain order. The man, whom the officer is charged with striking, came out to the injured man

several times and was interfering with the police officer in maintaining order. It appears from the testimony of petitioner and his witnesses that he hit the man before placing him under arrest. He said "so immediately after I struck him I reached for my 'jack' and placed him under arrest. I said 'you are under arrest'." There is nothing in the testimony to indicate that it was necessary for petitioner to strike this man in order to accomplish his purpose of placing him under arrest. The record discloses that he was placed under arrest after the blow was struck. The suspension was for a period of 10 days without pay. We are of the opinion that under the circumstances in this case, the action of the borough council, affirmed by the police civil service commission, was not unjust, unreasonable or contrary to the evidence. If the incident had occurred after the man had been placed under arrest, the situation might have been different.

In In re Appeal of George F. Goehring, 8 Beaver 80, we said:

"The act provides for review by the Court on appeal. We conclude the legislature intended that the court should consider the evidence taken before the commission and such additional proof or testimony as the appellant may desire to offer. We believe, under the act, it is the duty of the court to weigh the testimony taken before the commission and before the court and reach its conclusion as to the charges preferred against the appellant. The act provides that the case shall be determined (by the Court of Common Pleas) as the court deems proper. We do not believe the legislature intended the court to be bound by findings of fact made by the commission."

We have carefully read the record in this case, and after a careful consideration thereof, we agree with the conclusions of fact and law appearing in the record.

### Order

And now, to wit, January 30, 1948, the within appeal is dismissed. Costs to be paid by petitioner.