Virgilio H. GUERRA et al., Appellants,

v.

Mario E. RAMIREZ et al., Appellees.

No. 13894.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 27, 1961.

Rehearing Denied Nov. 29, 1961.

Hill, King, McKeithan & Reynolds, Mission, Arnulfo Guerra, Roma, Gerald Weatherly, Laredo, for appellants.

L. Hamilton Lowe, Austin, A. J. Vale, Glenn H. Ramey, F. R. Nye, Jr., Emilio Gutierrez, Pope & Pope, Rio Grande City, for appellees.

PER CURIAM.

This is an election contest growing out of a school trustee election held by Roma Independent School District in Starr County, Texas, on April 1, 1961. Virgilio H. Guerra, Lucio Gonzalez, Alonzo Alvarez, and Erasmo Z. Perez, known as the old party candidates, were declared to have been elected by the election officials, and Mario E. Ramirez, Cesar Salinas, Mrs. Maxine C. Guerra, and R. T. Gonzalez, known as the new party candidates, were declared to have been defeated. There were eight names on the official ballot, with only four to be elected. Some 1950 votes were cast in the election. Of these, about 1,250 were present voters and about 700 were absentee voters.

The present voters taken alone gave the old party candidates a majority of about 800 to 400, while the absentee votes taken alone gave the contestants a majority of approximately 620 to 80. Thus it will be seen that the absentee votes were overwhelmingly for the new party candidates. About 216 absentee votes were challenged by Arnulfo Guerra, as challenger for the old party, and all of these challenges were sustained by the election judge. Francisco Hinojosa was the challenger for the new party and made only a few challenges, all of which were overruled.

After the rejection of some 200 absentee ballots cast for the new party candidates, the election officials declared the candidates of the old party elected by the following votes:

| Old Party Candidates | | | New Party Candidates | | |
|---|---|---|---|---|---|
| Virgilio H. Guerra | 936 | votes | Mario E. Ramirez | 850 | votes |
| Lucio Gonzalez | 918 | " | Cesar Salinas | 853 | " |
| Alonzo Alvarez | 890 | " | Mrs. Maxine C. Guerra | 836 | " |
| Erasmo Z. Perez | 896 | " | R. T. Gonzalez | 829 | " |

Thus it will be seen that the new party candidates were defeated by a margin of about 37 votes to 107 votes, after some 200 challenges were sustained.

The new party candidates contested the election, and after hearing evidence the trial court ruled that 192 persons listed in the contestants' petition whose votes had been rejected were qualified voters. He eliminated three votes for contestees on the ground that the persons casting these votes were convicts. He then held that the absentee votes marked "mutilated" and rejected by the election officials, were valid and should be counted. This resulted in a gain of 13 votes for contestants.

The trial court also opened the stub box, collected all stubs which had not been signed, and eliminated the ballots corresponding to these stubs. Contestees thereby lost twenty votes and contestants three votes, resulting in a net loss for contestants of 17 votes. Of the absentee ballots held invalid by the trial judge, 190 were cast for contestants, and some seven cast for contestees. The trial court declared the contestants elected and the contestees defeated by the following votes:

| Contestees | | Contestants | |
|---|---|---|---|
| Alvarez | 872 | R. T. Gonzales | 1033 |
| L. Gonzalez | 899 | M. Guerra | 1037 |
| V. Guerra | 918 | Ramirez | 1054 |
| Perez | 879 | Salinas | 1057 |

The first question to be decided is whether the burden of proof was on the contestants to show by the evidence that the ballots rejected by the election officials were in truth and in fact those of voters qualified in every respect, or whether they were only required to prove that the grounds on which the ballots were allegedly rejected did not exist.

■ The general rule, universally followed, is that when election officials have rejected the ballot of a voter, such voter is presumed to be an illegal voter, and the burden of proof is upon the party wishing to have that ballot counted to show by clear and satisfactory proof that such voter was a legally qualified voter in every respect. Pippin v. Holland, Tex.Civ.App., 146 S.W. 2d 266; Barker v. Wilson, Tex.Civ.App., 205 S.W. 543; Kempen v. Bruns, Tex.Civ. App., 195 S.W. 643; 21 Tex.Jur.2d, Elections, p. 446, § 179. The same rule applies whether the ballots are cast by present voters or by absentee voters. Solis v. Martinez, Tex.Civ.App., 264 S.W.2d 956.

■ Appellees, while conceding that the general rule is that election judges are presumed to have done their duty, and therefore their action in rejecting votes should be upheld, unless those wishing to have such rejected votes counted show at least prima faciely that such votes were legal votes, contend that in this case the rule should be reversed, because Raul Gonzalez, who acted as presiding judge of the election, was disqualified to so act, and demonstrated that he was not fair and impartial, but biased, prejudiced and very much of a partisan in favor of the old party candidates.

In this connection, appellees point out that under the provisions of Art. 3.04, Texas Election Code, V.A.T.S., Raul Gonzalez was disqualified to act as such presiding judge because he had served as a member of the Board of Trustees of the Roma Independent School District up until two days before the election. He was neither duly appointed or elected, but merely appeared, and upon the suggestion of J. C. Guerra, volunteered to serve. Appellees further contend that he demonstrated his bias, prejudice and unfairness when he had first sustained a challenge made by Arnulfo Guerra, challenger for the old party, as to two absentee votes, but when someone present said "they are ours" he reversed his ruling and Guerra withdrew his challenge; then, when Hinojosa, challenger for the new party, made the same challenge that had been made by Guerra, he promptly overruled it. They further point out that he sustained about 200 challenges to absentee votes made by Guerra without any sworn evidence to support such challenges.

Appellees have cited no authorities sustaining their contention to the effect that where it is shown that the presiding judge of an election is disqualified, not properly elected or appointed, prejudiced, biased and an unfair partisan, as above stated, the presumption should not be that he has done his duty in passing upon challenges to votes, but should be to the contrary. The case of Meriwether v. Stanfield, Tex.Civ.App., 196 S.W.2d 704, cited by appellees, goes no further than to hold that where it is shown that a presiding judge of an election is a strong partisan in favor of one side; that he has wagered money that a certain candidate will win, and that he alone read all the ballots and no one checked his reading thereof, the trial judge is justified in opening the ballot boxes and recounting the ballots. That case would not justify our holding here that the rule which assumes that election officials have done their duty, be disregarded and that rejected ballots should be counted, without evidence being offered by the contestants that they were cast by voters who were in every respect qualified to vote in the election.

■ It is plain that before the appellees here would be entitled to have a vote counted in their behalf, which had been rejected by the election officials, the burden would be upon them to show, by clear and convincing evidence, that the voters who cast

such rejected ballots were qualified voters in every respect. This is true not only of the ballots marked "rejected", but also of those marked "mutilated". This the appellees have failed to do, with the possible exception of about seven absentee votes. The trial judge rejected three votes that had been cast for appellants because each voter had allegedly been convicted of a felony. The evidence is not sufficient to show that these three votes were cast by the particular person who had been convicted of a felony, and, therefore, these three votes should be restored to appellants.

■ The trial court did not err in rejecting the ballots corresponding to unsigned stubs found in the stub box. Vicars v. Stokely, Tex.Civ.App., 296 S.W.2d 599. The evidence in a number of instances shows affirmatively that the election officials correctly rejected many of the absentee ballots. The provisions of Article 5.05 Election Code, as amended by Acts of 1959, c. 483, V.A.T.S., require that an absentee voter must detach the stub from his ballot, then fold the ballot and place it in the envelope marked for the ballot and seal the envelope, and after signing the stub must place the ballot envelope and the stub in the carrier envelope, and then seal the carrier envelope and sign the affidavit on that envelope.

When the time has arrived for the election officials to cast the absentee ballots, they are required, among other things to check the signature on the application against the signature to the affidavit, and if they correspond, to open the carrier envelope and place the stub in the stub box and the ballot envelope in the ballot box without opening it. Here, in a great number of instances the voter placed both the ballot and the stub in the envelope intended only for the ballot, then sealed that ballot envelope and placed it in the carrier envelope. When the election officials opened the carrier envelope they found no stub, and therefore they had no right to cast the ballot by placing it in the ballot box. They would not have the right to open the ballot

envelope and there search for the stub before placing it in the ballot box. The election officials cannot lawfully cast an absentee ballot where no stub is found in the carrier envelope. Art. 5.05, Subdivision 6, Texas Election Code, as amended by Acts 1959, 56th Legislature, p. 1055, ch. 483, § 1.

■ The County Clerk undoubtedly confused the provision of the Election Code providing, in effect, that a county clerk could receive absentee ballots up until 1:00 p. m. of the day of the election in county-wide elections, as provided in Art. 5.05, Subdivision 5, Texas Election Code, supra, with the provisions of Subdivision 7 of the same article, providing, in effect, that in elections less than county-wide the county clerk will not receive absentee ballots after 8 a. m. of the second day prior to such election as valid ballots. The County Clerk testified that he received ballots up until 1:00 p. m. on election day and delivered them to the presiding election judge as valid ballots, notwithstanding this was less than a county-wide election. This cast a cloud on all of the absentee votes and before any of the rejected ballots could be counted, the party attempting to have them counted, in addition to showing that they were cast by voters who were legally qualified in every respect, would have the further burden of showing that such ballots were received in the office of the county clerk on or before 8 a. m. on the second day before the election. This was not done with respect to any of the rejected ballots.

While the appellees were still offering evidence, and before they had introduced any evidence concerning sixty rejected ballots, the trial court stated, in effect, that the burden of proof had shifted, and he was going to restore 192 rejected absentee ballots cast for appellees, unless contestees came up with testimony showing that they should not be restored. In this he erred.

■ It further appears that the case was tried upon the theory that all that was required of contestants was to show that the ground of challenge made by Guerra

was not a valid ground of challenge, while the law requires that before a rejected absentee ballot can be restored and counted, the evidence must clearly show that it was cast by a voter who was fully qualified in every respect. Solis v. Martinez, supra.

Inasmuch as the case was tried upon a wrong theory and was not fully developed, the judgment will be reversed and the contest remanded for a new trial.

Reversed and remanded.

### On Motions for Rehearing.

■ We are of the opinion that we were in error in stating, in our original opinion, that the trial court erred in not requiring further proof with reference to the ballots marked "Mutilated". The record shows that the presiding judge of the election, Raul Gonzalez, identified those ballots and testified that the ballots marked "Mutilated" were ballots regularly cast at the election, and each had a number on it. Presumably there was a corresponding stub number in the stub box for each of these ballots. No one seemed to question this matter. He further testified that the only reason he rejected these ballots and refused to count them was that he considered them "Mutilated Ballots", and that they were marked in such a manner that he was unable to determine the intention of the voters, or they were torn and thereby mutilated, in his opinion. This evidence was sufficient to justify the trial court in counting such of these ballots as were marked in a manner to indicate the intention of the voter. This does not change our former judgment reversing and remanding this cause.

■ Appellees raise the further question that we should have upheld the trial court's action in counting the absentee ballots where the stub and the ballot were both placed in the envelope intended only for the ballot. Appellees contend that while it would have been a violation of the law for the election judge to have opened the envelope which contained both the ballot and the stub, and to have placed the stub in the stub box and the opened envelope containing the ballot in the ballot box, yet the trial judge may open the envelope which the election judge refused to open, and if he finds therein both the stub and ballot, he may count such ballot. We do not agree. Art. 5.05, Subd. 6, Election Code, as amended in 1959, V.A.T.S. provides for the method of opening, casting and counting absentee ballots. When the stub is sealed with the ballot in the ballot envelope, it cannot be cast and counted by the election officials without violating the provisions of the Election Code providing the method of casting and counting absentee ballots. The election judge here followed the letter of the law in not casting and counting the forty-nine absentee ballots when he found no stub in the carrier envelope, and he could not open the ballot envelope in search of such stub without violating Art. 5.05, Subd. 6, supra. Where the election judge followed the law in not casting and counting such absentee ballots, they should not be later cast and counted by the trial judge in an election contest. We feel that the provisions of Art. 5.05, Subd. 6, as amended in 1959, are mandatory, and to hold otherwise would open the door to fraud and destroy the secrecy of the ballot.

■ In their motion for rehearing, appellees further contend that while Subd. 6 of Art. 5.05, gives, to the special election canvassing board provided for in county-wide elections, authority to pass upon the qualifications of absentee voters and to reject absentee ballots, that no such authority is given to the presiding judge of an election, where the election is one less than county-wide. We feel that when Art. 5.05, supra, is considered as a whole, the powers given to a special election board of three or more, when the election is county-wide, are necessarily given to the judge or judges of an election that is less than county-wide. If this interpretation is not given to Subd. 9 of Art. 5.05, Election Code, then there is no method provided for the casting of absentee ballots in elections less than county-wide. Subdivision 9, reads in part:

"On the day of such election the absentee votes cast in elections less than county-wide shall be opened by the election judges of the precinct holding said election in accordance with the provisions set out in Subdivision 6 above."

This means that in elections less than county-wide the election judges exercise the same authority over the absentee ballots, as is exercised by special canvassing boards in county-wide elections, otherwise we would have a complete hiatus in our election laws with reference to absentee ballots in elections less than county-wide. So far as this record shows, Raul Gonzalez was the only election judge at this school trustee election; therefore, it was his duty to exercise the duties which he did exercise. No doubt, he had clerks serving with him, but clerks cannot pass upon such matters as a challenge to a voter.

What we have said above in no way changes our conclusion that this case should be reversed and remanded for a new trial.

Appellants' and appellees' motions for rehearing are overruled.