Tommie MITCHELL, Appellant,

v.

W. C. (Bill) JONES, Appellee.

No. 7478.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 9, 1962.

Fulton & McClain, Welby K. Parish, Gilmer, for appellant.

Power, McDonald & Mell, Gilmer, Smith, Hall & Huffman, Marshall, for appellee.

PER CURIAM.

This is an election contest arising out of the 1962 Second Democratic Primary Election in Upshur County. W. C. (Bill) Jones and Tommie Mitchell were run-off candi-

dates for the office of Tax Assessor-Collector of Upshur County. The party Executive Committee canvassed the votes and found that Jones received 2741 votes and Mitchell received 2739 votes. Following a lengthy trial the District Court of Upshur County ordered Jones's name certified as Democratic nominee on the basis of 2720 votes for Jones and 2719 votes for Mitchell.

It is a fundamental precept of a democratic society that suffrage, the right to vote, is first among the citizen's prerogatives, because therein is the ultimate legal power to foster and protect without violence natural rights, constitutional privileges and democratic institutions, and the free exercise of the power is not to be curtailed or unreasonably restricted by legislative enactment or judicial decree. In recognition of this principle the Constitution of the State of Texas provides that every citizen of the United States who has resided in the State of Texas one year next preceding an election and the last six months in the county in which he offers to vote is a qualified voter unless (1) under twenty-one years of age, (2) an idiot or lunatic, (3) a pauper supported by the county, (4) previously convicted of a felony or (5) being subject to a poll tax has failed to timely pay it. Article 6, Sections 1 and 2, Vernon's Ann.Texas Constitution.

The Constitution in Art. 6, Sec. 4, and Art. 16, Sec. 2, has limited the field of legislative action to legislation "necessary to detect and punish fraud and preserve the purity of the ballot box", and to protect the exercise of free suffrage from "all undue influence * * * [by] power, bribery, tumult or other improper practice." The paramount principle stated above and the constitutional provisions relating to the voting franchise are all pervasive and must be taken into account in the construction of the absentee voting laws, along with settled rules of statutory construction.[1] When vot-

---

1. The Supreme Court in Markowsky v. Newman, 134 Tex. 440, 136 S.W.2d 808, 813 approved the following rule:

"Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it will still be sufficient, if that which is done accomplishes the substantial purpose of the statute."

Again in Ramsay v. Wilhelm, Tex.Civ. App., 52 S.W.2d 757, wr. ref., it is stated:

"It is common knowledge that such matters are usually intrusted to laymen, and that in sparsely populated counties and small towns a strict compliance with all the provisions of the statutes is seldom, if ever, observed. The will of the legal voters as expressed at the polls is the matter of paramount concern, and, in the absence any showing of fraud, or reasonable indication that such will has not been fairly expressed and the evidence thereof properly preserved, the courts have been liberal in construing and enforcing as directory only the provisions of the election laws which are not upon their face clearly mandatory. * * *

"And, absent evidence of fraud, unfairness in the holding of an election, or tampering with the ballots or returns, the courts of this state have uniformly held that ballots cast by legally qualified voters should be given effect, though election officials had failed to discharge their duties as prescribed by statute, unless there is *clear* provision in the statute itself that such ballots shall not be counted. (Emphasis added) * * *

"This liberal policy, uniformly adhered to, was announced by Judge Gaines in Davis v. State, 75 Tex. 420, 432, 12 S.W. 957, 962, in the following language: 'The main design of all election laws is, or should be, to secure a fair expression of the popular will, in the speediest and most convenient manner; and we think a failure to comply with provisions not essential to attain that object should not avoid the election, in the absence of language clearly showing that such was the legislative intent.'

"The Legislature has with particularity thrown numerous safeguards around the suffrage of the citizenship; and the manner, form, time, and place of its exercise. Of necessity, the holding of such elections are and must be intrusted to those not always conversant with the numerous provisions of the law regulating same. As a result, all of such provisions are seldom

ing statutes are so construed it is apparent that a qualified citizen shall not be denied the exercise of his suffrage except in those cases where the legislature has acted within constitutional authority and has expressly or by clear implication indicated an intention that a ballot of a qualified voter shall be void if certain prohibited conditions are shown to exist.

The appellant's first five points question the legality of the ballots of well over 100 persons the trial judge ordered tallied in favor of W. C. Jones. Error is premised on the contention that Art. 5.05, Subdivisions 1, 2, 4, and 15, and Art. 8.13 of the Election Code, Vernon's Ann.Civ.St. are of such nature that failure of the voter, election official, notary, or other person mentioned by the statutes and authorized or required to do or perform a part in the absentee voting process, to do and perform every such act and requirement thereof voids an absentee ballot. In support of this position the appellant cites Farrell v. Jordan, Tex.Civ.App., 338 S.W.2d 269 (1960) and Guerra v. Ramirez, Tex.Civ.App., 351 S.W. 2d 272 (1961) as authority for the proposition that compliance in minute detail with the mentioned statutes is mandatory. However, this question is not necessarily reached in the disposition of each of the points of error.

■ It is thought the present article 5.05 Election Code should be construed with due regard to its text prior to the 1959 amendment and predecessor statutes and the decisions thereunder. In Fugate v. Johnston, Tex.Civ.App., 251 S.W.2d 792 it is said with reference to Art. 5.05 before amendment in 1959: "Before the enactment of the

recent code the only portions of what is now Article 5.05 that were declared mandatory were what is now Section 5 of Article 5.05 that relates to the legal time during which absentee voting is permitted at all, and Section 10 of the same article that provides that an elector who dies after voting absentee shall not have his vote counted." All other provisions were held to be directory. Unless the amended text shows a provision is intended to be mandatory its re-enactment confirms the construction previously made. An examination of Article 5.05 as amended appears to have intended to add several mandatory provisions.

■ The first point challenges the respective ballots of a group of voters who received assistance in marking their ballots on the basis that the person giving assistance was not sworn, and did not take an oath in accordance with that part of Art. 8.13 pertaining to persons rendering assistance to voters in the preparation of their ballot. Art. 5.05, Sec. 15 and Art. 8.13 contain provisions identical in meaning, stating that when assistance is rendered the voter in preparing a ballot other than the assistance allowed by statute the ballot shall be void. It must be assumed that the legislature intended what the statute said; that is, that the vote cast shall be void if the voter receives assistance in preparing a ballot other than the assistance allowed by law. The facts show that no voter received assistance except in marking a ballot; such assistance is the very thing the statute authorized. Taking an oath regarding his duties by the person rendering assistance is no part of the act of assisting the voter. *Receiving assistance not authorized,* not being assisted by an unsworn person, is the prohibited act

complied with in every particular. But it is equally true that such failures on the part of election officials seldom defeat a fair expression of the popular will. Where they do not, the courts have been liberal in sustaining the result. Turner v. Teller (Tex.Civ.App.) 275 S.W. 115. Where such derelictions of the election officials have interfered with or prevented such a fair expression, or where there is any rea-

sonable indication that such was the result, the courts have set them aside. *But to enforce a strict observance of all of the directory provisions of the statute, absent proof of unfairness or dishonesty, would more often defeat than effectuate the popular will; and it is probable that but few elections would stand such a scrupulous test."* (Emphasis added.)

voiding the ballot. It is sound policy, supported by abundant authority, that legislative acts tending to abridge the citizen's franchise will be confined to their narrowest limits by a liberal interpretation [2] favoring the citizen's right to vote. Appellant's first point of error is overruled.

A person by person comparison has not been made, but it appears that invalidating the votes of substantially the same absentee voters challenged by the first point is the object of appellant's second point of error. The gist of the second point is that each of the group of voters failed to swear to the affidavit on the ballot carrier envelope after they voted.

Appellant asserts that such votes are invalid and should not be counted because this failure is a substantial non-compliance with that portion of Art. 5.05 of the Election Code which reads:

" * * * The elector shall mark the ballot before a notary public or other person authorized to administer oaths, sign his name on the back of the ballot stub, detach the stub from the ballot, fold the ballot and place it in the envelope marked 'Ballot Envelope' and seal the same. The elector shall then place the stub and the ballot envelope in the carrier envelope, seal the same and sign and swear to the affidavit on the carrier envelope, which shall be certified by the notary public or other officer before whom the ballot is marked. The carrier envelope shall then be mailed, postage prepaid, to the county clerk. As amended Acts 1959, 56th Leg., p. 1055, ch. 483, § 1."

■ Three different notaries and the County Clerk and his deputies are involved in actions which vary slightly with respect to each vote challenged. The proof shows the general pattern to have been that the voters signed the affidavit on the carrier envelope, or authorized someone else to sign it, and handed the affidavit to the notary or officer to be completed. The complaint is that the notary or officer did not orally administer an oath and the voter did not orally respond. The affidavits on their face are clear and complete. The oath signed by each voter began "I, (voter's name), do solemnly swear * * *", etc. When the voter signed such oath in the presence of the notary and handed it over to the notary or officer for the purpose of the official affixing his jurat the affidavit was completed. Shelton v. Berry, 19 Tex. 154; Art. 23, Sec. 18, Vernon's Texas Civil Statutes; "Affidavits", 2 Tex.Juris.2d 394, Sec. 1. The second point of error is overruled.

■■ The third point of error is concerned with the votes of many of the voters involved in the first and second points. The point is that voters who were neither blind nor suffering from a bodily infirmity which rendered them physically unable to write were assisted in marking their ballots, such assistance constituting a violating of Art. 5.05 and Art. 8.13. The facts developed by the appellant varied as to the different voters. On the whole the evidence tended to show that the voter challenged was not blind, and had the use of both hands. In several instances the voter's illiteracy may have been the reason for needing assistance in marking the ballot.

Art. 8.13 provides that no voter shall have assistance in preparing his ballot unless he can not do so because of some bodily infirmity that renders him physically unable to write or sightless. In Art. 5.05 Sec. 15

2. The Supreme Court of Texas in Thomas v. Groebl, 147 Tex. 70, 212 S.W.2d 625 said:
"* * * The right to vote is so fundamental in our form of government that it should be zealously safeguarded as are our natural rights. It has been said that 'laws abridging the natural right of the citizen should be restrained by rigorous constructions within their narrowest limits.' It is sufficient, however, that we apply here the less extreme and well established rule of construction that statutes regulating the right to vote should be given a liberal interpretation in favor of that right. * * *"

it is provided that assistance authorized by Art. 8.13 may be rendered absentee voters insofar as Art. 8.13 is applicable, the latter article stating specifically: "The witness assisting the voter may perform any or all of the physical acts necessary to comply with the procedure for absentee voting." It is probable that the restriction in Art. 8.13 of the assistance to the physically impaired and blind, if mandatory, would in a proper case be held unconstitutional as depriving persons unable to read and write of their franchise. The constitution does not make literacy a qualification to vote. However, when assistance is rendered, as is the case here, the quoted sentence from Art. 5.05 Sec. 15 pertaining to assistance to absentee voters should be interpreted as allowing assistance to a qualified voter in the performance of any or all of the physical acts necessary to comply with the absentee voting regulations. Such assistance includes marking the voter's ballot. As noted the proof made was that the voter did not suffer from certain specified physical impairments, such as blindness, loss of hands, etc., and no conclusive proof was made of the absence of other disabling physical condition.

The appellant's fourth point charges the trial court erred in not invalidating the ballots of voters who, after marking their ballots, delivered them sealed in a ballot carrier envelope to W. C. (Bill) Jones.

■ The pattern of the facts disclosed by the record is that after the challenged ballots were marked and sealed in an envelope, the envelope was handed to the notary present for the purpose of swearing the voters, and the notary disposed of them either by depositing the envelopes in the mail or leaving the envelopes with someone else—the route of those not shown to have been mailed in reaching the absentee ballot box was not traced. One group of eight carrier ballot envelopes was delivered to "Mr. Jones".

In connection with all the challenged votes, the record contains no proof that the ballot carrier envelopes were not deposited in the United States mail with postage prepaid addressed to the County Clerk, and no proof that the ballot carrier envelopes containing the ballots cast were not received by the County Clerk through regular mail. Likewise, no proof was made that the ballot carrier envelopes, after being sealed by or in the presence of the voters, were opened or tampered with, nor is there evidence that the absentee ballots contained in the carrier envelopes were altered or tampered with in any respect; on the contrary the trial court has impliedly found no fraud in connection with the manner the carrier envelopes and absentee ballots were handled from the time they left the voters' hands until counted by the election officials.

■ The law presumes that the ballots were received through the mail by the County Clerk in the absence of affirmative proof to the contrary, because the law presumes election officials, the Clerk being one, performed their duty. Lewis v. Crump, Tex. Civ.App., 34 S.W.2d 617, N.W.H.

■ The appellant relies on the last sentence of Art. 5.05, Sec. 4. The section containing other provisions ends by saying: "The carrier envelope shall then be mailed, postage prepaid, to the county clerk." The facts proven show no violation of the direction of the article. Nowhere does the statute direct that the voter personally place the carrier envelope in the mail. Neither does the statute purport to invalidate a ballot that the voter did not personally deposit in the mail. The trial court properly ordered the ballots counted. Stratton v. Hall, Tex.Civ.App., 90 S.W.2d 865. The point is overruled.

■ The fifth point asserts that certain absentee voters did not make sworn application for a ballot to the county clerk as required by Art. 5.05, subsection 2. In part the article says: "An elector desiring to vote absentee shall make written sworn application for an official ballot to the county clerk of the county of his residence", and provides that the application be signed by

the elector, or be witnessed at direction of the elector in case of inability to write because of physical disability. The present statute was amended in 1959. The only change in the subdivision made in 1959 material to the point in question respects the oath to the application. Prior to 1959 the application was not required to be sworn to; now it should be. The prior statute was held to be directory in this respect in Paredes v. Martinez, Tex.Civ.App., 264 S.W.2d 958. Re-adoption of the statute with the addition that the application be sworn to, and omitting therefrom any expression of a legislative intent to void the ballot of a voter who fails to swear to the application indicates the legislature was satisfied with the construction given the statutes by the court at the time of re-enactment. Since no fraud was alleged or proven and the vote was cast, the court properly held that a substantial compliance with the law was had. No case is cited by the appellant showing a similar factual situation where an appellate court has held otherwise. The facts of this case differentiate it from Farrell v. Jordan, supra.

The trial court construed Art. 5.05 Sec. 4 as mandatory wherein it provides that "the elector shall detach the stub from the ballot, fold the ballot, and place it in the envelope marked 'ballot envelope' and seal the same. The elector shall then place the stub and the ballot envelope in the carrier envelope, seal the same and sign and swear to the affidavit on the carrier envelope", etc. There is some doubt that language used in the absentee ballot law should be given the same construction that somewhat similar language is given in the election law dealing with the voter detaching and depositing ballot stubs in the stub box. Voters at the polls are required to personally detach the stub from a ballot and to personally deposit the stub in the stub box and the ballot in the ballot box as a condition of casting a legal ballot. A voter at the poll does this in order to keep secret the number of his ballot, yet provide a means for identifying his ballot if that becomes necessary. In absentee voting this element of secrecy is lost because the stub number is known to the election official who removes it from the carrier envelope and deposits it in the stub box. The reason for a voter personally depositing the stub in the stub box and the ballot in the ballot box fails with respect to absentee voting. When the reason for a rule fails it is often said the rule fails.

■ However, the question has been before a Court of Civil Appeals and the Supreme Court in Guerra v. Ramirez, 351 S.W.2d 272. The Court of Civil Appeals said "When the election officials opened the carrier envelope they found no stub, and therefore had no right to cast the ballot by placing it in the ballot box. They would not have the right to open the ballot envelope in their search for the stub before placing it in the ballot box. The election officials cannot lawfully cast an absentee ballot where no stub is found in the carrier envelope." The Supreme Court dismissed application for writ of error. In this case it was proven that the stub was not detached from the ballot, but was sealed in the ballot envelope with the ballot. On the authority of the cited case it must be said that the trial court correctly voided the ballots thus handled.

Appellant's Seventh and Eighth points of error challenging the vote of Marianne Kinnimer and C. G. Willis are probably determinable by the rules applied in disposing of the first five points of error. But it is not necessary to make a decision thereon because of the disposition to be made of appellee's crosspoints 1 and 4 which are hereafter discussed.

Appellant by his 9th, 10th and 11th points attacks the action of the trial court in opening the Rocky ballot box, re-counting the ballots, and also makes other attacks upon the court's action with matters involving the Rocky box.

The allegations of appellee's motion to open the Rocky box related to alleged irregularities, including miscalling votes and miscounting of the results.

The official count of the Rocky box showed that the appellant received 147 votes and that the appellee received 46 votes. 193 votes were counted at the Rocky box—six were not counted because it was deemed by the election officials that these ballots were so mutilated that they could not be counted for either party. The trial judge, after hearing testimony, opened the Rocky box, recounted the ballots, and found that appellant received 146 votes and that appellee received 46. According to the trial court's judgment the appellant lost one vote on the recount of the Rocky box.

Some 49 qualified voters testified that they voted for appellee in the Rocky box. Other evidence also shows that at least 47 votes were cast for appellee in the Rocky box.

A witness testifying with reference to the manner in which the election officials at the Rocky box handled certain ballots testified in part as follows:

" 'Q. I don't have it clear, you say at the time you were voting Mrs. Dunbar and some other persons were in the same room there where you were counting ballots?

" 'A. Yes, sir, they were at a table at the back of the building.

" 'Q. Was one of them calling or how were they handling it?

" 'A. Well, from where I was, she was calling them off and tallying them and this other man was sitting at the end of the table tallying them.

" 'Q. Did anything unusual happen?

" 'A. Yes, I sat there and listened to them calling off and she called off two or three and dropped the ballots and she reached over and picked them up and she called them off. She dropped—

" 'Q. In the same box she dropped them in?

" 'A. Yes, sir. I told several people as I left that looked unusual to me. It was the second time I ever voted a ballot like that.' "

Other testimony with reference to other alleged irregularities at the Rocky box was placed in evidence by appellee as shown in the record.

In McIver v. Starkey, Tex.Civ.App., 271 S.W.2d 314, it is stated in part as follows:

"On the contrary, it is our opinion that the trial judge is vested with wide discretion in determining all matters and things necessary or proper to the determination of such election contest, including the question as to whether the ends of justice seem to require the reopening of a ballot box in any given case, and upon appeal from his determination of the contest the trial court's decision will not be disturbed on any questions decided unless a material abuse of discretion on his part is clearly shown by the record."

Also see Vicars v. Stokely, Tex.Civ.App., 296 S.W.2d 599, wr. ref., N.R.E., 157 Tex., 182, 300 S.W.2d 623.

We hold that the record in this cause does not show an abuse of discretion on the part of the trial court in opening and recounting the ballots in the Rocky box. We further hold that reversible error is not shown by appellant's complaint that the trial court erred in failing to make a comparison of the ballots and ballot stubs in the Rocky box inasmuch as appellant objected to and opposed the court's making such a comparison when the appellee moved and requested the trial court to make such comparison. Appellant's 9th, 10th and 11th points are overruled.

Appellant by his 12th point of error contends that the trial court erred in not counting the votes of Rennie Peoples, B. J. Harris and wife, Mary Harris. The above named parties did not vote, did not present themselves to vote, did not tell the presiding judge of the election that they had lost, mislaid or left their poll tax receipts at home, and made no request to make an affidavit to such effect. Since these parties did not vote there was no legal way to count

their uncast wishes as votes for anyone. Appellant's 12th point is overruled.

■ Appellant by his 13th point contends that the trial court erred in not holding the absentee ballot of Mrs. T. B. Burford void because the absentee ballot was mailed to the post office box of Hal Newsome, which appellant contended was neither the permanent or temporary place of residence of Mrs. Burford, and further contending that her ballot was void because she was given improper aid.

There was testimony in the record that Mrs. Burford had been in a convalescent home in Gilmer for about a year prior to the trial of the case. However prior to that time for more than 35 years she had been living at the home of a son-in-law, Mr. Newsome, and that for the past 35 years or more she had been getting her mail at the post office box of Mr. Newsome in Gilmer and was still getting her mail there. The evidence is also sufficient to support a finding that no improper assistance was given Mrs. Burford. Appellant's 13th point is overruled.

■ Appellant by his 14th point contends that the trial court erred in holding that the voters, John King, Joyce King and Tommie Lee Aaron were not legally qualified voters of Upshur County, Texas. The residence of these voters were challenged and controverted by evidence presented by appellee. Issues of fact were raised by the evidence in this respect for the trial court to pass upon. We hold that there was evidence of probative force to support the trial court's findings upon these voters, and that the evidence is sufficient to support the trial court's findings. Appellant's 14th point is overruled.

■ Appellant by his 15th point attacks the absentee ballot of E. H. Orr. The Notary Public, through inadvertence, failed to sign the jurat on the front of the application, although signing the one on the back of it following the affidavit that no exemption certificate was required.

The testimony shows that the voter was before the Notary, and the Notary's seal was also placed on the jurat form at the front of the application, as well as at the back of the form relating to the exemption certificate. Under the authorities hereinbefore cited with respect to absentee ballots involving similar situations, we hold that the trial court's action in counting the ballot of E. H. Orr is supported by the evidence and the law, and that the irregularities complained of by appellant in this respect do not compel the ballot of E. H. Orr to be voided. Appellant's 15th point is overruled.

Appellee's cross-point one complaining of the trial court adding one vote for J. D. Peoples to the total votes counted for appellant Mitchell is sustained because the evidence is undisputed that J. D. Peoples did not cast any ballot for anyone at the election in question. The vote of J. D. Peoples is therefore deducted from the total which the trial court counted for the appellant.

■ ■ Appellee's cross-point four complaining of the trial court's failure to count ballot No. 3420 as a vote for appellee Jones in the Rocky box is sustained. An examination of a true copy of this ballot shows several dark and heavily drawn lines and marks through the name of appellant Mitchell. The name of Mitchell was very heavily scratched out, and a small portion of a line extended upwards from Mitchell's name to take in a very small portion of the name of appellee Jones. We hold that it is obvious from an examination of this ballot that the voter intended to vote for appellee Jones and to vote against appellant Mitchell. It is well settled by statute and by case law that the failure of a voter to mark his ballot in strict conformity with the election code does not invalidate the ballot, and that the ballot shall be counted in all races in which the intention of the voter is clearly ascertainable. Art. 6.06 Tex. Election Code; Duncan v. Willis, 157 Tex. 316, 302 S.W.2d 627. Ballot 3420 is therefore counted as a vote for appellee Jones and is added

to the total number of votes credited to him by the trial court.

In view of the fact that the questions involved would become moot before the expiration of the time ordinarily allowed for filing motions for re-hearing, or before questions could be certified to the Supreme Court and answered, it is ordered that no motion for re-hearing, or to certify questions to the Supreme Court, may be filed.[3]

The judgment of the trial court is affirmed. It is further ordered that the mandate in this cause be issued instanter.

DAVIS, Justice (dissenting).

This is a primary election contest between Tommie Mitchell, contestant-appellant, and W. C. (Bill) Jones, contestee-appellee, for the office of Tax Assessor-Collector of Upshur County for an unexpired term. The contest involves absentee ballots. This writer and his wife voted by absentee ballots, illegally, in the primary election in Upshur County. We knew at the time we voted we were voting illegally. We didn't have the courage nor the intestinal fortitude to insist that we be permitted to vote legally. We knew what the law required, but we didn't obey it. An attorney for the contestant-appellant, and an attorney for the contestee-appellee knew about our illegal voting prior to the contest. Neither side challenged our illegal votes. The attorneys were just being courteous. Judges and their families are not infallible. When we knowingly make a mistake, our actions should be criticized. In the future, we will vote legally.

The Executive Committee of the Democratic party canvassed the returns of the Second Primary on June 5, 1962. It certified the results of the Second Primary held on June 2, 1962, and declared that the appellee, W. C. (Bill) Jones, received 2,741 votes, and that appellant, Tommie Mitchell, received 2,739 votes. It certified that Jones was the Democratic nominee for the office of Tax Assessor-Collector. The contest was filed. After the trial the court held that the contestee, Jones, received 2,720 legal votes and the contestant, Mitchell, received 2,719 legal votes. It certified that Jones was the nominee.

Appellant brings forward 15 points of error. By his points 1, 2, 3, 5, 6, and 15 he takes the position that Arts. 5.05 and 8.13 of the Texas Election Code, as amended in 1959, are mandatory, and that certain absentee ballots cast for the contestee should not be counted. Without quoting the statutes or naming the voters, Articles 5.05 and 8.13 of the Texas Election Code, as amended in 1959, are mandatory. A total of 112 absentee ballots that were cast for the contestee should NOT have been counted. The articles relate to affidavits, assistance given to absentee voters, provides that any person assisting in such voting shall take an affidavit, and concludes with the following paragraph: "Where any assistance is rendered in preparing an absentee ballot other than as herein allowed, the ballot shall not be counted, but shall be void for all purposes."

From the legislative history it seems that Subd. 15 of Art. 5.05 of the Texas Election

3. In order for an appeal to be determined before the printing of ballots for the 1962 General Election it was necessary for this court to make special orders limiting the time in which the transcript, statement of facts, and briefs of the parties might be filed and oral argument heard. To meet the voting deadline submission of the case has been given precedence over pending cases. This effort to expedite a decision and give exhaustive consideration to questions presented was incompatible with brevity and conciseness in preparing an opinion. On first consideration by the entire Court it was agreed that a true Per Curiam opinion would be written, the points of error being distributed equally among the members and each charged with the preparation of the opinion dealing with his points. In the event of disagreement it was contemplated the majority view would be stated as such. However, this understanding disappeared in the wash of the divergent views that developed.

Code is a new subdivision regulating assistance to absentee voters. The courts have previously held that provisions allowing assistance to voters unable to mark their ballots is *directory;* not mandatory. The purpose of the subdivision was to impose the same restrictions on absentee voters as exists to regular voters at regular polling places. Such statutes have been held to be mandatory. Appeal of Cusick, 136 Pa. 459, 20 A. 574, 10 L.R.A. 228; Farrell v. Jordan (Tex.Civ.App.) 338 S.W.2d 269, wr. dism.; Guerra et al. v. Ramirez et al. (Tex.Civ.App.) 351 S.W.2d 272, wr. dism.

The courts have held our previous statutes to be directory, not mandatory, without a statute so providing. In Stratton v. Hall (Tex.Civ.App.) 90 S.W.2d 865, wr. dism., the court said:

"It appears to be well settled that *in the absence of a statute prohibiting the counting of ballots because of irregularities either in preparing or casting, and in the absence of fraud or of a showing that the returns were changed or tampered with,* ballots cast by qualified voters should be counted." (Emphasis added.)

It seems that the courts have long been pointing out the necessity of the amendment of our absentee voting statutes that were passed in 1959. Since that time, two decisions have been handed down. Both of these decisions have held the statutes mandatory.

Appellant takes the position that the action of the voters in applying for the absentee ballots, the manner of assistance that was received by them, and the fact that they were required to swear to them were not complied with according to the 1959 amendments. The testimony shows that none of the voters actually swore to the affidavit for the application for the ballot, and did not swear to the return on the envelopes. Although they signed their names, or someone else signed for them, the notaries signed, and placed their seal upon it, there was still no oath administered to the voters in either instance. The requirements of an affidavit are set out in 2 Tex.Juris.2d Chap. 4, p. 408 to 415, including §§ 14 through 21. The sufficiency of an affidavit is set out in 3 Am.Juris.2d 396, § 20; and is further defined in 2 C.J.S. Affidavits § 20 b, p. 958.

For the errors hereinabove pointed out, I would sustain points 1, 2, 3, 5, 6, and 15, and 112 absentee votes that were cast for the appellee Jones would be deleted.

By his point of error No. 4 the appellant takes the position that the mailing of the absentee votes were in violation of Secs. 1 and 4 of Art. 5.05. I believe the point to be without merit and would overrule it.

By his point 6 appellant takes the position that the requirement of the statutes to tear the stub from the ballot and place it separately in the envelope should not be held to be mandatory in the event the other statutes were not held to be mandatory. To hold that the requirements of the statutes are not mandatory would be in conflict with the holding of the Court of Civil Appeals in Guerra v. Ramirez, supra. I think the requirements of the statutes as to the stubs on the ballots are mandatory. I would overrule this point.

By his 7th point, appellant says the trial court erred in counting the ballot of Marianne Kinnimer because she made an application for an absentee ballot before Clayton Willeford, a Notary Public in Upshur County. It seems to be well settled that subdivision 1(b) of Art. 5.05 has been held to be mandatory. Where a person makes application for a ballot in the county where he or she votes, mails the application for ballot from outside the county, and mails the envelope with the ballot enclosed from outside, they have voted illegally. While Miss Kinnimer was in Upshur County, she should have gone before the County Clerk and cast her ballot. In the case of Farrell v. Jordan, supra, Chief Justice Bell held that a person voting in this manner had voted illegally. Such was his holdings as to Mrs.

E. A. Weams and Mrs. Minnie Brightwell. I would sustain this point and would not count her vote.

Appellant says the court erred in counting the vote of C. G. Willis who, at the time, was in New Orleans, Louisiana. He did not make application according to the statutes as required by Sec. 2 of Art. 5.05. The article is mandatory, and the vote of Willis should not be counted. I would sustain that point of error and would not count the vote of Willis.

By his 9th, 10th and 11th points of error appellant takes the position that the trial court erred in opening the Rocky box. I do not believe that under the pleadings and the evidence that there was any showing that would allow the trial court to open the ballot box and the stub box. My theory of the law as to these three points is stated in McJimsey v. Yates (Tex.Civ.App.) 324 S.W.2d 438, wr. dism. I would sustain these three points and certify the Rocky box as containing 147 votes for appellant, and 46 votes for the appellee.

By his 12th point of error, appellant states that the trial court erred in not counting the votes of three people who presented themselves apparently for the purpose of voting, but did not have their poll tax receipts. The people did not carry their poll tax receipts when they presented themselves to vote. They could have gotten them had they been eager to cast their ballots. Under the record in this case, the refusal of one person to vote and the other people not applying to vote was not beyond the discretion of the election judge. I would overrule this point of error.

By his 13th point of error, appellant says the court erred in counting the vote of Mrs. T. B. Burford for contestee because the absentee ballot was mailed to the post office box of someone else, not the permanent or temporary place of residence of the voter, and the provisions of Art. 8.13 of the Election Code pertaining to *aid* and *assistance* are mandatory and must be complied with.

The statutes being mandatory, I would sustain this point as to the aid and assistance given the voter.

By his 14th point, appellant takes the position that the trial court erred in not counting the votes of John King and wife, Joyce King, and Tommie Lee Aaron. He did not count the vote of Tommie Lee Aaron because he paid his poll tax in Ector County. He had lived in Ector County until about March 10, 1960. He, being a married man, had to reside in Upshur County for six months. I would overrule this point as to Tommie Lee Aaron.

The trial court erred in refusing to count the votes of John King and wife, Joyce King. King and his wife own a farm in Upshur County. They had recently moved to California for the purpose of finding work. They left part of their household goods in Upshur County. His wife and children were in Texas at the time of the election contest. King had stated that he intends to return to Upshur County and build a home on the farm. If his residence in California was temporary, he could have maintained his residence in Upshur County and continued to vote there. I would sustain the point of error as to John King and Joyce King, and count the votes for appellant.

Appellee brings forward 8 cross-points of error. By his cross-point one, appellee takes the position that the trial court erred in counting the vote of J. D. Peoples for the appellant because Peoples did not cast a vote in the election. What has heretofore been said on point twelve presents the question of whether or not J. D. Peoples was denied the right to vote. He was not refused the right to vote illegally. He could have returned and secured his poll tax receipt, or made an affidavit and he would have been permitted to vote. I would sustain this cross-point.

By his cross-points 2, 3, and 4 appellee complains of the action of the trial court about matters pertaining to the Rocky box.

As heretofore stated on points nine, ten and eleven, the Rocky box was illegally opened. I would overrule these cross-points.

By his cross-point 5, appellee says the trial court erred in not counting absentee votes that were cast in the election. The Absentee Canvassing Board failed to count the votes for undisclosed reasons. To require the counting of a ballot, they must show that the voter was a qualified voter in every respect, as a matter of law, before his vote can be counted. There are many qualifications that must be shown to prove that the voter is qualified. The trial court did not err in refusing to count these votes. I would overrule cross-point 5.

Appellee's cross-point 6 says that the court erred in holding that certain ballots should be counted as votes for the contestee, Jones, because the applications for absentee ballots bore a physician's certificate signed by a duly licensed and practicing doctor of Chiropractic. Sub-division 2, Art. 5.05, provides that a ballot may be mailed to persons unable to go to voting places because of sickness or disability upon application *sworn to* by a voter and certified to by a duly licensed physician or an accredited Christian Science practitioner. I find no cases holding that a duly licensed Chiropractor, or Dr. of Chiropractic, is not authorized to sign such a certificate. If the statutes are so construed as requiring that the certificate of a medical doctor or an accredited Christian Science practitioner would render unacceptable the certificate of a licensed Chiropractor, or other member of the healing arts, the statutes would be unconstitutional and in violation of Art. 16, Sec. 31 of the Texas Constitution. It provides that No preference should be given to any school of medicine. The State of Texas through a Board of Examiners, licenses Chiropractors. "Medicine" as that word is used in this section of the Texas Constitution embraces the art of healing, whether by scientific or supposedly scientific method, the art of preventing, curing or alleviating diseases, and remedying as far as possible results of violence and accident, some thing or method supposed to possess curative power, and embraces among others, physicians, surgeons and osteopaths. Ex parte Collins, 57 Tex.Cr.R. 2, 121 S.W. 501, affirmed Collins v. State, 223 U.S. 288, 32 S.Ct. 286, 56 L.Ed. 439; Ex parte Halsted, 147 Tex.Cr.R. 453, 182 S.W.2d 479. In the event the legislature intended to leave out Chiropractors, they made a mistake. I would sustain this cross-point as to the certificate, the votes being disallowed for other reasons.

I think the appellee's cross-points 7 and 8 are without any merit. I would overrule the same.

I would reverse and render the judgment of the trial court, holding that the appellant, Mitchell, received 2,722 votes, and the appellee, Jones, received 2,602 votes.