Virgilio H. GUERRA et al., Appellants,

v.

Mario E. RAMIREZ et al., Appellees.

No. 14116.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 30, 1963.

Rehearing Denied Feb. 14, 1963.

Hill, King & McKeithan, Mission, Arnulfo Guerra, Roma, for appellants.

Glenn E. Ramey, Rio Grande City, Stafford, Atlas, Spilman & Gurwitz, Morris Atlas, Gary Gurwitz, McAllen, for appellees.

PER CURIAM.

This is the second appeal of an election contest growing out of a school trustee election held by Roma Independent School District of Starr County on April 1, 1961. Mario E. Ramirez, Cesar Salinas, Mrs. Maxine C. Guerra and R. T. Gonzalez, known as the new-party candidates, properly brought this suit to contest the certification by the election officials of the election of the four contestees, Virgilio H. Guerra, Lucio Gonzalez, Alonzo Alvarez and Erasmo Z. Perez, known as the old-party candidates. The first trial resulted in a judgment for all four contestants, but the judgment was reversed and the cause remanded by this Court. Guerra v. Ramirez, Tex. Civ.App., 351 S.W.2d 272. All contestants again prevailed upon the second trial.

The preliminary background is set forth in our first opinion, and it is seen that this contest involves the action of the election judge in rejecting over 200 absentee ballots. The parties stipulated as to the beginning total for each candidate, which was the total as certified by the election officials. They further stipulated that the trial court could open the ballot boxes and count all ballots which were not contested, except twenty-three ballots which did not contain signed stubs, and sixteen ballots which were rejected as "mutilated" ballots. As to these latter ballots, the trial court would examine them to determine if the voter's intent could be ascertained. As to the other rejected ballots, the burden of proof was upon the contestants to show by clear and satisfactory proof that the voter whose ballot was allegedly improperly rejected was a legally qualified voter in every respect. Guerra v. Ramirez, supra. The contestants undertook to meet this burden by producing approximately 85 witnesses who testified concerning 118 persons whose ballots were allegedly improperly rejected.

The beginning count of the trial court after the stipulations, count of unchallenged ballots and rejection of ballots with stubs improperly signed, was as follows:

| Contestees | | | Contestants | | |
|---|---|---|---|---|---|
| Virgilio H. Guerra | 908 | votes | Mario E. Ramirez | 849 | votes |
| Lucio Gonzalez | 891 | " | Cesar Salinas | 849 | " |
| Erasmo Z. Perez | 869 | " | Mrs. Maxine C. Guerra | 832 | " |
| Alonzo Alvarez | 864 | " | R. T. Gonzalez | 826 | " |

The trial court, after hearing the evidence, counted all of the "mutilated" ballots, restored three ballots improperly taken from each of contestees, and then counted as valid 107 of the rejected absentee ballots. The trial court arrived at a final result as follows:

| Contestees | | | Contestants | | |
|---|---|---|---|---|---|
| Virgilio H. Guerra | 914 | votes | Cesar Salinas | 970 | votes |
| Lucio Gonzalez | 896 | " | Mario E. Ramirez | 968 | " |
| Erasmo Z. Perez | 874 | " | Mrs. Maxine C. Guerra | 952 | " |
| Alonzo Alvarez | 869 | " | R. T. Gonzalez | 946 | " |

The candidates did not run for places and therefore the four candidates who received the highest number of votes would win.

■ Contestees have duly perfected their appeal from the judgment declaring all four contestants elected in accordance with the above totals. They first urge that the trial court erred in excluding evidence in support of their allegations that the entire absentee voting procedure was so irregular and fraudulent that all ballots should be thrown out. They assert that contestants, through members of their political faction who held public office, secured absentee votes through threats, intimidation and other unlawful means. The trial court refused to hear this evidence, apparently under the impression that the stipulations under which the case was tried took these issues out of the case. We must overrule this point because contestees have not properly perfected a bill of exception by showing the testimony sought to be admitted. In order to show reversible error, the bill of exception must show the testimony the contestees would have offered. Rules 434 and 372, T.R.C.P.; Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155; Wheat v. Citizens National Bank, Tex.Civ.App., 310 S.W.2d 735, writ ref., n. r. e.

Contestees also assert that all absentee ballots should be discarded because the county clerk received ballots after the time permitted by law. Subd. 7 of Art. 5.05, Texas Election Code, controls this election and provides that the county clerk will not receive absentee ballots after 8 a. m. of the second day prior to such election. On the first trial, the county clerk testified that he received ballots up until 1 p. m. on election day, and delivered them to the presiding election judge as valid ballots. This testimony, even though attempted to be explained at the second trial, casts a cloud on all of the absentee votes and placed the burden on contestants to show that such ballots were received in the office of the county clerk on or before 8 a. m. on the second day before the election. Guerra v. Ramirez, supra. This burden was met by the trial court's examination of the postmark on the carrier envelope of each ballot and rejection of those which were not postmarked in time to arrive as required by law for valid ballots. Those which were not timely postmarked were not counted by the trial court and are not included in the 107 ballots in question.

■ Contestants did not introduce any evidence that any of the voters of the 107 ballots rejected by the election judge had paid a poll tax. There was evidence that 23 of those persons were over-age, or just twenty-one years of age, and that they were exempt from payment of poll tax. Contestees assert that as to the remaining 84 persons, the contestants failed in their burden of showing that the rejected ballots were cast by legally qualified voters in every respect. Contestants introduced in evidence a properly authenticated poll list prepared by the county tax collector under Art. 5.22 of the Texas Election Code, whereby the tax collector is required to prepare and furnish to the election board a certified list of the citizens in each precinct who have paid their poll tax. This was prima facie evidence that the persons named therein had paid their poll tax and, in the complete absence of evidence to the contrary, established this qualification of the persons named thereon. McCrary on Elections, § 466; Vol. 29 C.J.S. Elections §§ 47 and 276. See also, Major v. Loy, Tex.Civ. App., 155 S.W.2d 617, no writ history.

Contestants concede that the ballots of Trinidad S. Montes and Eduardo Garcia, Jr., were erroneously counted by the trial court, as neither of their names is on the poll list and the evidence does not show that they are exempt from payment of poll tax. They each cast a vote for each of contestants, and therefore we deduct two votes from each contestant's total.

■ Contestants produced a number of witnesses whose ballots had been rejected and who testified to their personal quali-

fications to vote. The qualifications of the remainder of the rejected voters were sought to be established by relatives and acquaintances of the voters. This type of evidence is proper if the witness is qualified to give the necessary information. Solis v. Martinez, supra. The voters who testified to their personal qualifications also were able to testify that they had voted absentee in this election, either at the courthouse or by mail. Contestees assert that as to 54 persons there is no evidence that the person about whom the testimony as to qualifications was given was the same person who voted. Contestants contend that this evidence is supplied by the evidence that a ballot was cast by a person of the same or similar name. Some of these ballots were cast at the office of the county clerk and the remainder by mail. In either event there is no testimony to show that the rejected ballot was cast by the same person whose qualifications were described. In Solis v. Martinez, Tex.Civ.App., 264 S.W.2d 956, writ dismissed, this Court passed on a related question. There the election officers had permitted the challenged voter to cast a ballot and contestants introduced evidence to show that persons of the same or similar names lived outside the district. We there held that the burden of proof in an election contest rests upon the contestant. To destroy a vote which the election official permitted, it was there held that the non-resident with the same or similar name must be identified as the one who voted. The fact that the names were similar to that on the ballot did not overcome the presumption that the election officials did their duty. This rule has particular application here, where the poll lists of the Roma School District show a great similarity of names. See also, McCrary on Elections, par. 469; De la Garza v. Gonzalez, Tex.Civ.App., 186 S.W. 2d 845, writ ref., want of merit; Reid v. King, Tex.Civ.App., 227 S.W. 960, no writ history. The fact that a number of witnesses are thereby necessary does not relieve the contestant of the heavy burden

he must carry to overthrow the presumption that the election officials discharged their duty properly in rejecting the ballots. State ex rel. Lukovich v. Johnston, 150 Tex. 174, 238 S.W.2d 957.

We, therefore, sustain contestees' point that as to these 54 persons contestants failed to discharge their burden of showing the ballots cast by legally qualified voters. One of these persons was Eduardo Garcia, Jr., whose vote we have previously rejected. Fifty-two ballots were cast which gave one vote for each contestant; and one ballot was cast with a vote for Virgilio H. Guerra, contestee, and for each of the contestants except Mario E. Ramirez, and these votes must be deducted.

■ Contestees object to other ballots being counted for the reason that the trial court improperly admitted baptismal certificates to show place of birth. These ballots were of the voters Maria del Refugio Garza and Saturina O. Rosa. They both appeared in person and gave evidence to show their birth in Texas. This evidence was not rebutted in any way by contestees. The baptismal certificates were merely cumulative and it is unnecessary for us to determine whether proof of their authenticity was properly made. Art. 4477, Rule 51a, § B, Vernon's Ann.Civ.Stats., provides for issuance of delayed birth certificates, and Rule 54a, of the same statute provides that same shall be prima facie evidence in all courts. We overrule contestees' points concerning the use of baptismal certificates and delayed birth certificates.

■ Contestees complain that there are discrepancies in thirty-nine names as shown in contestants' pleading, the names as shown on an exhibit made by a supervisor of contestants at the time challenges were made before election officials, and the names as they appeared on the poll list. Clearly, any discrepancy as shown by the contestants' exhibit would be immaterial. We have also eliminated persons whose ballots

we have heretofore rejected. This leaves sixteen challenged voters. Insofar as voters Cruz Alvarez, Anna G. Flores, Guadalupe V. Garza, Maria del Refugio G. Garza, Nasario Lopez, Anselmo Martinez, Leonardo Hernandez, and Ramona M. Vera are concerned, all discrepancies involve the use of an initial or a one-letter spelling variance between the contestants' pleading and the ballot. There was no objection to receipt of the evidence on ground of lack of proper pleading or surprise. Each of these voters appeared as witnesses to prove his qualifications to vote and there is no variance in identity between the witness, his ballot and the poll list. No reversible error is presented in counting these eight ballots.

■■■■■■ There is a discrepancy in the middle initial, as shown on the poll list and as shown on the ballot, of Estanislada R. Escobar, Guadalupe G. Escobar, Paula G. Garza, Azucena G. Orta and Lydia A. Mata. All four of these persons were shown by the evidence to be exempt from payment of poll tax and there was no connection shown with the name on the poll list. On the other hand, they were identified by their personal testimony with the name shown on the ballot. Angelica S. Lopez testified in person concerning her qualifications and that she voted absentee. The trial court found a ballot in that name in the ballot box. The poll list did not carry her middle initial, but the voter was sufficiently identified. No reversible error is presented in counting these six ballots.

■■■■ Beatriz G. Cantu testified in person concerning her qualifications, and that she voted absentee. She was over age and therefore not on the poll list. There was a ballot cast in the name of Beatriz J. Cantu. The same situation exists with Belia L. Gonzalez. She proved her qualifications and that she voted absentee. A ballot was cast in the name of Belia T. Gonzalez. The trial court counted both of these votes. In our opinion, the difference between a middle initial should not oust the votes. There was no other Beatriz Cantu and no other Belia Gonzalez who voted during the election. We have checked the lists of absentee voters, as well as the lists of those who voted in person. Moreover, neither the name Beatriz nor Belia is a common name as appears from an examination of the numerous pages of voter lists. A written "J" can easily be confused with a written "G". A written "L" can also easily be confused with a written "T". No question was raised in the trial court as to the identity of the two voters. Both votes were properly counted. 40 Tex.Jur.2d, Names, § 8.

■■■ The "mutilated" ballots were examined by the trial court, who determined that the intention of the voter was clearly indicated on all sixteen of these challenged ballots. In view of the testimony of the election judge that the only reason he rejected these ballots was that he considered them "mutilated ballots," it was not necessary for contestants to show the qualifications of these voters. Guerra v. Ramirez, supra. We have examined these ballots which are in evidence and overrule contestees' objection.

■■■ Contestees complain that a number of voters were not shown fully qualified in that there was only hearsay evidence that they were not dependent on the county for support at the time of the election. Properly authenticated records of county expenditures for the time in question were introduced in evidence, and none of the 107 persons involved were shown to have received any support from the county.

■■■ Appellants also objected to evidence that another group of voters had never been convicted of a felony, because it was hearsay evidence. The point is immaterial, for we have already sustained appellants' objection to each of these voters except one, Guadalupe G. Escobar, whose vote was counted. Her husband testified that she had not been convicted. In our

opinion, for election contest purposes, a husband is qualified to give this testimony.

By cross-points, contestants complain of the trial court's action in rejecting absentee ballots of Alonzo Vidal, Juan M. Garcia and Antonio Cruz. Vidal's ballot was rejected because the trial court found the evidence insufficient under contestants' evidence to show that the ballot was timely received by the county clerk, as required by Art. 5.05, § 7, V.A.T.S. Election Code. We overrule this cross-point. Garcia's ballot was rejected because the trial court did not find that the contestants had met their burden of showing by clear and satisfactory proof that Garcia was an American citizen. We cannot say that, as a matter of law, this finding was erroneous and therefore overrule this point.

The ballot of Antonio Curz was rejected by the trial court and from the statements of the attorneys it appears that it was because the ballot was in the carrier envelope rather than in the ballot envelope. No findings were made by the trial court and we therefore must look to the record to see if the evidence shows as a matter of law his eligibility to vote. The record shows that Castulo Antonio De La Cruz, also known as Antonio Curz, was 80 years of age and was issued an identification card by the United States Department of Justice, Immigration and Naturalization Service for use of a resident citizen, which reflects that he became a citizen of the United States in 1958. There is no showing that he met the residence qualifications necessary to vote in this election, in that the only evidence of residence is that *at time of giving testimony* he lived in the district. We overrule this cross-point.

The corrected totals of the candidates are: Contestants: Mario E. Ramirez 914, Cesar Salinas 915, Mrs. Maxine C. Guerra 897, R. T. Gonzalez 891; Contestees: Virgilio H. Guerra 913, Lucio Gonzalez 896, Erasmo Z. Perez 874, Alonzo Alvarez 869.

The judgment of the trial court is reformed so as to declare the following trustees elected: Cesar Salinas, Mario E. Ramirez, Virgilio H. Guerra and Mrs. Maxine C. Guerra. In all other respects the judgment is affirmed. The costs are taxed one-half to Contestees and one-half to Contestants. A motion for rehearing must be filed within ten days.